Mary KULAWIK, as personal representative of the Estate of David Raymond Blosser, Jr. and as the guardian ad litem of the minors Sharon Elizabeth Blosser and David Rhys Blosser, Appellant and Cross–Appellee,

v.

ERA JET ALASKA, d/b/a Era Helicopters, Inc., Appellee and Cross–Appellant.

Nos. S–3045, S–3046.

Supreme Court of Alaska.

Nov. 1, 1991.

Rehearing Denied Dec. 20, 1991.

L. Ames Luce and Dan A. Hensley, Anchorage, for appellant/cross-appellee.

James N. Leik and Clark Reed Nichols, Perkins Coie, Anchorage, for appellee/cross-appellant.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Justice.

## I. INTRODUCTION

This appeal and cross-appeal involve a wrongful death action brought on behalf of the estate and the children—statutory beneficiaries of a plane accident victim. The beneficiaries assert several specifications of error: (1) that the method used in calculating future earnings under *Beaulieu v. Elliott*, 434 P.2d 665 (Alaska 1967), was improper; (2) that beneficiaries of the decedent's will not designated in the wrongful death statute should be able to recover prospective inheritance damages; (3) that a new trial should have been granted by the superior court; and (4) that attorney's fees were miscalculated. A cross-appeal was filed by ERA Jet Alaska ("ERA"), challenging the jury's award of damages for loss of prospective inheritance as well as the superior court's determination of attorney's fees.

We affirm in part and reverse in part.

## II. FACTS AND PROCEEDINGS

On August 20, 1985, David Blosser was killed in the crash of a Lear jet operated by defendant ERA. He was survived by his ex-wife, his girlfriend, and his two minor children, Sharon (age 13) and David (age 10).

Mary Kulawik, as personal representative under Alaska's Wrongful Death Act, AS 09.55.580,[1] brought suit on behalf of the children, the designated statutory beneficiaries, and the estate. In September 1987, in accordance with Civil Rule 68, ERA made an unapportioned, lump-sum offer of judgment to Kulawik in the amount of $575,000. The offer was rejected.

Prior to trial, the superior court made numerous rulings. The court (1) denied

1. Kulawik, an attorney, was substituted as personal representative in place of Toni Blosser, David Blosser's ex-wife, shortly after commencement of the lawsuit.

ERA's request for a determination precluding any award of damages for loss of prospective inheritance to the two Blosser children; (2) denied Kulawik's request that the court instruct the jury that all monies attributable to prospective inheritance should be presumed recoverable by the children or, alternatively, that the estate should be separately entitled to recover the amount which would have gone to non-statutory beneficiaries under the decedent's will; (3) granted ERA's request that Dr. Solie, Kulawik's economist, be ordered to calculate decedent's personal consumption in the same manner in which he calculated future earnings, *i.e.*, without any deductions for anticipated future income taxes, in accordance with our holding in *Beaulieu*.

The case then proceeded to trial. The jury awarded wrongful death damages in the amount of $562,212 for the Blosser children, which was apportioned to the children in accordance with each child's individual loss. Each child's damages included $31,506, representing that portion of the decedent's prospective future estate (estimated by the jury at $126,024) which the jury determined would actually have accrued to each child upon their father's natural death.

Kulawik moved for a new trial on the ground that the jury's award was unconscionably low. The motion was denied. Thereafter, the superior court, over Kulawik's objection, granted ERA's request for costs, attorney's fees and reduction of prejudgment interest under Civil Rule 68, for the period following Kulawik's rejection of ERA's offer of judgment. The superior court awarded Kulawik a total of $74,354 in attorney's fees under Civil Rule 82 for those fees incurred prior to the offer of judgment. It did so on the basis of Rule 82's "contested with trial" schedule.

## III. FUTURE EARNINGS CALCULATIONS

In *Beaulieu v. Elliott*, 434 P.2d 665 (Alaska 1967), we held that

Income tax rates, provisions relating to deductions and exemptions, and other aspects of income tax laws and regulations are so subject to change in the future that we believe that a court cannot predict with sufficient certainty just what amounts of money a plaintiff would be obliged to pay in federal and state income taxes on income that he would have earned in the future had it not been for a defendant's tortious conduct. We hold that a damage award for impairment of earning capacity should not be reduced by an estimated amount representing income taxes that the injured party may be required to pay on future income.

*Id.* at 673.[2] Inherent in *Beaulieu* was also the policy that "an injured person is entitled to be replaced as nearly as possible in the position he would have occupied" but for the defendant's tortious conduct. *Id.* at 670–71.

■ The parties agree that future earnings in a wrongful death case are calculated by (1) determining the decedent's future gross earnings and (2) subtracting the decedent's personal consumption. *Osborne v. Russell*, 669 P.2d 550, 560 (Alaska 1983).[3] Both parties also agree that Kulawik's economist properly disregarded future income tax liability in calculating future gross income, as required by *Beaulieu*.

However, the parties disagree on how to determine personal consumption. According to Kulawik, in order to interpret *Beaulieu* "to produce ... fair results," calculation of the decedent's disposable income requires subtracting tax liability from personal consumption, because the potential tax liability would not "have ... actually been at [the decedent's] disposal."

2. We note that the 1986 statutory reforms leave this policy, as it applies to calculation of future earnings and income tax liability, intact. *See* AS 09.17.070. Moreover, this cause of action accrued before the legislative reforms of AS 09.17.040 became effective in June of 1986.

3. In a "statutory beneficiaries" case, however, this calculation only determines the pool of funds available for recovery by the beneficiaries. The damages actually awarded are to be measured by the actual "loss to the survivors." *In re Estate of Pushruk*, 562 P.2d 329, 331 (Alaska 1977).

Kulawik's economist initially deducted future income taxes to compute future personal consumption. ERA, however, moved the superior court to order Kulawik's economist to recalculate the decedent's future personal consumption without deducting future income taxes. The superior court granted the motion and Kulawik appeals this ruling.[4]

Kulawik contends that her position is consistent with the rule in *Beaulieu*. This argument lacks merit. Kulawik cannot invoke the rule in *Beaulieu* as a sword to compute future gross income and simultaneously use *Beaulieu* as a shield against reducing future disposable income. The rule in *Beaulieu*, a rule we have affirmed,[5] proscribes any conjectural analysis of future tax liability. If future tax liability is too speculative to calculate in determining future net income, *see Beaulieu*, 434 P.2d at 673, then it is equally speculative in calculating future disposable income.

■ In short, future tax liability should not be considered in calculating either future gross earnings or future personal consumption. Thus, we affirm the superior court's application of *Beaulieu* in the case at bar.

## IV. LOSS OF PROSPECTIVE INHERITANCE

### A) *The Right To Prospective Inheritance*

Prior to trial, ERA sought partial summary judgment on whether damages for "loss of prospective inheritance" are recoverable on behalf of statutory beneficiaries under Alaska's Wrongful Death Act. The superior court denied ERA's request for a ruling precluding recovery of such damages. ERA now challenges that ruling in its cross-appeal.

ERA contends that recovery for loss of prospective inheritance is expressly precluded by the text of AS 09.55.580(c). AS 09.55.580(b) and (c) provide, in part:

*Action for wrongful death.*

(b) The damages recoverable under this section shall be limited to those which are the natural and proximate consequence of the negligent or wrongful act or omission of another.

(c) In fixing the amount of damages to be awarded under this section, the court or jury shall consider all the facts and circumstances and from them fix the award at a sum which will fairly compensate for the injury resulting from the death. In determining the amount of the award, the court or jury shall consider but is not limited to the following:

(1) deprivation of the expectation of pecuniary benefits to the beneficiary or beneficiaries, without regard to age thereof, that would have resulted from the continued life of the deceased and *without regard to probable accumulations of what the deceased may have saved during the lifetime of the deceased....*

(Emphasis added). ERA argues that AS 09.55.580(c)(1), by its plain language, prohibits the trier of fact, in calculating loss of expected "pecuniary benefits," from considering probable savings or accumulations which the decedent would have amassed during the course of his or her natural life. Since "prospective inheritance," by definition, consists of such savings or accumulations, ERA contends that AS 09.55.580(c)(1) precludes such an award.

■ We conclude that ERA's arguments should be rejected. We hold that the legislative history of AS 09.55.580(c)(1) makes clear that a designated beneficiary in a wrongful death suit can recover "prospective inheritance," the inheritance he or she would have received if the deceased had not died prematurely.

---

**4.** The superior court ruled that:
  To the extent that calculations involve an amount which isolates "future" income taxes and such amount is treated as something other than a part of gross earnings available for either decedent's consumption, beneficiary support or inheritance, such calculations do not disregard future income taxes and are, therefore, not in accordance with *Beaulieu.*

**5.** *See Alaska Airlines, Inc. v. Sweat,* 568 P.2d 916, 934 & n. 28 (Alaska 1977).

A beneficiary's ability to recover "prospective inheritance" presents a question of first impression in this state.[6] Prospective inheritance represents that portion of the decedent's "probable accumulations" which a survivor could reasonably expect to inherit. Prospective inheritance is an item of damage available only under a "loss-to-the-survivor" theory of wrongful death damages, whereas probable accumulations is the measure under a "loss-to-the-estate" theory. 1 S. Speiser, *Recovery for Wrongful Death*, § 3:39 at 277–78 (2d ed. 1975).

To understand AS 09.55.580(c)(1), its legislative history must be examined. Congress enacted Alaska's original wrongful death statute in 1900,[7] adopting a modified version of Oregon's wrongful death statute. It contained no limit on the types of damages available, although damages were controlled by a statutory cap of $10,000.[8]

■ Since adoption of the wrongful death statute in 1900, it has been established that in wrongful death actions brought on behalf of the estate, the measure of damages was the amount the decedent would have probably saved had she not died prematurely. The territorial courts used "probable accumulations" and "sav[ings]" to define the measure. For example, in *Linge's Admir. v. Alaska Treadwell Co.*, 3 Alaska 9 (1906), an action brought on behalf of Linge's estate, the district court reasoned that "[i]n the eye of the law, the estate has been injured by the death of Linge." *Id.* at 13. Using mortality tables, the territorial court found that Linge was deprived of 38 years of life, and determined that "what he would *save* in that time" would "be the test" for compensatory damages. *Id.* (emphasis added).

Loss-of-savings was again deemed the proper measure of damages in *Jennings v. Alaska Treadwell Gold Mining Co.*, 170 F. 146 (9th Cir.1909), which also involved an action brought on behalf of the estate.[9] In *Jennings*, the Ninth Circuit adopted the following test for estate actions: "the consequent amount of *probable accumulations* during the expectancy of [the decedent's] life." *Id.* at 149 (quoting *Perham v. Portland Elec. Co.*, 33 Or. 451, 53 P. 14,

---

**6.** Kulawik argues that this court has implicitly approved the right of designated beneficiaries to recover prospective inheritance by affirming cases which arguably awarded damages for loss of prospective inheritance. In support, she cites *State v. Guinn*, 555 P.2d 530, 544–46 (Alaska 1976), *State v. Phillips*, 470 P.2d 266, 271 (Alaska 1971), and *Tommy's Elbow Room v. Kavorkian*, 727 P.2d 1038, 1046 (Alaska 1986). In *Tommy's Elbow Room*, we quoted verbatim Alaska Pattern Civil Jury Instruction 4.06, which provides that the damages recoverable by statutory beneficiaries in wrongful death actions may include "the loss ... of ... any savings or accumulations the deceased would have produced during her natural life and which would have gone to the beneficiary on deceased's death." *Id.*

In none of these cases did we directly address the recoverability of prospective inheritance by designated beneficiaries under AS 09.55.580. Our reference to a pattern jury instruction does not constitute a resolution of the issue in question here.

**7.** Section 353, pt. IV, Carter's Annotated Alaska Code (1900).

**8.** This initial wrongful death statute for the Territory of Alaska read as follows:

When the death of a person is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action therefor against the latter, if the former might have maintained an action, had he lived, against the latter for an injury done by the same act or omission. Such action shall be commenced within two years after the death, and the damages therein shall not exceed [five] ten thousand dollars, and *the amount recovered, if any shall be exclusively for the benefit of the decedent's husband or wife and children when he or she leaves a husband, wife, or children, him or her surviving; and when any sum is collected it must be distributed by the plaintiff as if it were unbequeathed assets left in his hands, after payment of all debts and expenses of administration, and when he or she leaves no husband, wife, or children, him or her surviving,* the amount recovered shall be administered as other personal property of the deceased person; but the plaintiff may deduct therefrom the expenses of the action, to be allowed by the proper court upon notice, to be given in such manner and to such persons as the court deems proper.

*Id.* Sections deleted from the source Oregon statute are in brackets. Sections added are underlined.

**9.** In *Jennings*, the decedent was survived by "family," but "left no surviving wife or children." *Id.* at 148.

19 (1898) (emphasis added)). *See also The Princess Sophia*, 35 F.2d 736, 740 (W.D.Wash.1929) (construing Alaska's statute and using the loss-to-the-estate measure even if beneficiaries existed, although there was no history of savings or accumulations). Probable accumulations/savings remained the measure of damages for estate actions until 1955,[10] and was subsequently labeled the "loss to the estate" measure. *Wien Air Alaska v. Simmonds*, 241 F.2d 57, 58 (9th Cir.1957) (construing the wrongful death statute as it existed prior to 1955 amendments).

However, prior to 1955 the measure of damages for a designated beneficiary was unclear. The language of the 1900 statute was inconclusive. On its face, no indication existed that the measure of recovery in a beneficiary action should differ from the measure in an estate action. The case law, however, was conflicting. Dicta from *Jennings* indicated that a beneficiary action should use the loss-to-the-survivor measure.[11] Also, two territorial courts which addressed the question reached opposite conclusions—one concluding that a loss-to-the-estate theory was proper,[12] and one concluding that a loss-to-the-beneficiaries theory was correct.[13]

In 1955, the legislature deleted the cause of action on behalf of the estate, and directed that only statutory beneficiaries may recover for wrongful death. This amendment directed that courts and juries, "in fixing the amount of damages" should consider "[d]eprivation of the expectation of pecuniary benefits ... that would have resulted from the continued life of the deceased and without regard to probable accumulations or what the deceased may have saved during his lifetime." Ch. 153,

---

**10.** Probable accumulations/savings is the current measure of damages for estate actions. *Osborne v. Russell,* 669 P.2d 550, 560 (Alaska 1983).

**11.** In quoting with approval the Oregon court's decision in *Perham,* the *Jennings* court suggested that if the decedent was survived by a designated beneficiary (i.e., a spouse or child), then the Alaska wrongful death statute would require a loss-to-the-survivor, and not a loss-to-the-estate, measure of damages:

> Under Lord Campbell's act and similar statutes, the damages recovered belong to the designated beneficiary; and are measured by the value of the life taken to the particular person entitled to the benefit of the statute, while under our statute they belong to the estate, and are coextensive with the value of the life lost, without regard to its value to any particular person. In the one case the object of the action is to recover the pecuniary loss sustained by the designated relatives, and in the other the value of the life lost, measured, as near as can be, by the earning capacity, thriftiness, and probable length of life of the deceased, and the consequent amount of probable accumulations during the expectancy of such life.

*Jennings,* 170 F. at 149 (quoting *Perham,* 53 P. at 19). Lord Campbell's Act was passed in England in 1846, and limited recovery to certain designated beneficiaries (the decedent's spouse, children and parents), and "measured damages with respect to the loss suffered by these beneficiaries." S. Speiser *Recovery for Wrongful Death,* § 1:8 (1975).

Because the decedent in *Jennings* "left no surviving wife or children," 170 F. at 148, the *Jennings* court's suggestion that a loss-to-the-survivors measure applies to beneficiary actions is merely dicta.

**12.** In *Kreidler v. Ketchikan Spruce Mills,* 10 Alaska 365 (1943), the decedent was survived by designated beneficiaries. The court quoted the designated beneficiary provision of the Alaska wrongful death statute, stating that "[t]his section of our statute was taken from the Oregon Code," and summarily decided that damages should be measured by the loss-to-the-estate. *Id.* at 367. The assertion that the designated beneficiary provision came from the Oregon Code is incorrect. *See also The Princess Sophia,* 35 F.2d at 740 (holding that the interest of "heirs" under the Alaska statute is identical to that under the Oregon statute).

**13.** *See Dralle v. Steele,* 13 Alaska 680 (1952), where the decedent was survived by designated beneficiaries (a wife and children) who sought recovery for mental anguish and loss of consortium. The court found *Perham* inapplicable and held that "recovery must be limited to pecuniary damages *suffered by the wife and children* ...." *Id.* at 686, 688 (emphasis added). Although the court did not specify how the beneficiaries' pecuniary loss was to be measured, it expressly rejected a "probable accumulations" measure, reasoning, in part, that a beneficiary action "has no relation with the estate of the deceased." *Id.* at 686.

During this time, several other state wrongful death statutes which designated beneficiaries were construed to measure damages by loss-to-the-estate. *See* 1 S. Speiser, *supra,* § 3:2 at 119–120 and nn. 41–42.

§ 1, SLA 1955 (now AS 09.55.580(c)).[14] At that time, "probable accumulations" and "savings" were the terms used by the courts to define the measure of damages in estate actions.

In our view, the 1955 legislation was intended to eliminate the uncertainty which then existed in Alaska's laws pertaining to wrongful death damages; i.e., whether "probable accumulations" was also the exclusive measure of damages in beneficiary actions. Thus, we conclude that the 1955 amendment was a substantive directive to measure the beneficiaries' pecuniary damages by the loss-to-the-beneficiaries, not by the loss-to-the-estate. Concurrent deletion of the estate action lends additional support to this construction.

■ Importantly, however, the legislature did not amend the statute to preclude recovery of "prospective inheritance" by the beneficiaries, although it was also an area of controversy in the law of wrongful death damages at the time the statute was amended in 1955.[15] Hence, in fixing the amount of pecuniary damages incurred, the legislature did not intend that the trier of fact must exclude prospective inheritance as an item of loss "to the beneficiary or beneficiaries."

Other portions of our wrongful death statute make this clear. For example, prospective inheritance damages are the "natural and proximate consequence of the negligence or wrongful act or omission of [the tortfeasor]," AS 09.55.580(b), and are damages which would "fairly compensate for the injury resulting from the death," AS 09.55.580(c). In short, by adopting the 1955 amendments, the legislature liberalized recovery of damages in a wrongful death. It adopted the more liberal loss-to-the-beneficiary measure of damages, expanded the ceiling on damages from ten to fifty thousand dollars, and allowed recovery for loss of consortium, loss of prospec-

---

**14.** In its entirety, the statute enacted in 1955 read as follows:

When the death of a person is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action therefore against the latter, if the former might have maintained an action, had he lived, against the latter for an injury done by the same act or omission. Such action shall be commenced within two years after the death, and the damages therein shall not exceed *fifty* thousand dollars, and the amount recovered, if any, shall be exclusively for the benefit of the decedent's husband or wife and children, when he or she leaves a husband, wife, or children him or her surviving; *or leaving no husband, wife or children surviving then and in that event, for the benefit per capita of the child or children of the decedent's child or children, if any, and the surviving parent or parents of the decedent.* When the Plaintiff prevails, the trial court shall determine the allowable costs and expenses of the action and may, in its discretion, require notice and hearing thereon. The amount recovered shall be distributed only after payment of all costs and expenses of suit and debts and expenses of administration. *The damages recoverable under this Act shall be limited to those which are the natural and proximate consequence of the negligent or wrongful act or omission of another.*

*In fixing the amount of damages to be awarded under this Act, the Court or jury shall consider all the facts and circumstances and from them fix the award that such sum as will fairly* compensate for the injury resulting from the death. In determining the amount of the award, the Court or jury shall consider but is not limited to the following:

(1) *Deprivation of the expectation of pecuniary benefits to the beneficiary or beneficiaries, without regard to the age thereof, that would have resulted from the continued life of the deceased and without regard to probable accumulations or what the deceased may have saved during his lifetime.*

(2) *Loss of contributions for support.*

(3) *Loss of assistance or services irrespective of age or relationship of decedent to the beneficiary or beneficiaries.*

(4) *Loss of consortium.*

(5) *Loss of prospective training and education.*

(6) *Medical and funeral expenses.*

*The death of a beneficiary or beneficiaries before judgment shall not affect the amount of damages recoverable hereunder.*

*The right of action hereby granted shall not be abated by the death of a person named or to be named the defendants.*

Ch. 153, § 1, SLA 1955. (Language in italics was added by the 1955 amendment.) The cause of action for the estate was added back in 1957. See ch. 6, § 1, SLA 1957.

**15.** See, e.g., Baker v. Slack, 319 Mich. 703, 30 N.W.2d 403, 407 (1948) (refusing to recognize as "pecuniary injury" anything "so speculative and nebulous as the fondly nurtured hope of an inheritance, enhanced by redress for decedent's wrongful death, but suspended by the tenuous cord of decedent's possible intestacy").

tive training and education, and for medical and funeral expenses. *See* ch. 153, § 1, SLA 1955. It would be inconsistent to hold that it simultaneously precluded recovery for prospective inheritance when there is no evidence to support legislative intent to enact such a prohibition.

Our construction of AS 09.55.580(c)(1) is buttressed by the fact that inclusion of prospective inheritance as an element of loss-to-the-beneficiary has long been recognized. As Speiser observes, Tiffany, in his 1913 treatise, *Death by Wrongful Act,* (2d ed.) stated,

> Where the evidence shows that it is probable that the decedent, but for his death would have accumulated property, which if he had died intestate, would have been inherited by the beneficiaries of the action, these facts constitute such a reasonable expectation of pecuniary benefit as to authorize a recovery of damages for its loss.

1 S. Speiser, *supra,* § 3:39 at 278.

Adoption of ERA's approach would lead to the anomalous result that statutory beneficiaries of a decedent who spent large amounts of money on her dependents would collect substantially more damages than statutory beneficiaries of a frugal decedent who had saved for the benefit of her dependents. ERA's approach also leads to the inconsistent result that an estate could recover probable accumulations, but a designated beneficiary could not.

■ ERA additionally urges that pecuniary benefits must be calculated without regard to any probable accumulations or savings of the deceased. However, this treats AS 09.55.580(c)(1) as an evidentiary limitation, which it is not. The rule created is a substantive one: the designated beneficiary's recovery is not fixed by a loss to the estate measure.

We previously interpreted the phrase "without regard to" as a substantive limitation. Alaska Statute 09.55.580(c)(1) also provides that the beneficiaries' loss should be determined "without regard to age." In *Horsford v. Estate of Horsford,* 561 P.2d 722 (Alaska 1977), however, we held that evidence of decreased expectation of pecuniary benefit with increased age *is* admissible as evidence of the beneficiaries' expectation of pecuniary loss; the "without regard to age" language is simply a substantive directive against precluding recovery for adult-aged beneficiaries. *Id.* at 728–29. Likewise, the "without regard to probable accumulations" language does not preclude evidence of probable accumulations for purposes of proving prospective inheritance, but instead acts as a substantive directive against exclusively using the loss-to-the-estate measure of damages.[16] *Cf.* 2A N. Singer, *Sutherland Statutory Construction,* § 46.06 at 104 (4th ed. 1984) ("There is a presumption that the same words used twice in the same act have the same meaning.").

■ Further, our construction of AS 09.-55.580(c)(1) conforms to the prevailing majority rule allowing recovery for loss of prospective inheritance. 1 S. Speiser, *supra,* § 3:39 at 278; Annotation, *Wrongful Death Damages for Loss of Expectancy of Inheritance from Decedent,* 91 A.L.R.2d

---

**16.** The limiting clause of AS 09.55.580(c)(1), which we have construed in this appeal, currently reads: "without regard to probable accumulations *of* what the deceased may have saved during the lifetime of the deceased" (emphasis added). In 1955, when this language was first added to the statute, it read "without regard to probable accumulations *or* what the deceased may have saved during his lifetime." Ch. 163, § 1, SLA 1955 (emphasis added).

ERA argues that this change, from "or" to "of" was a typographical error, occurring when a new publisher commenced printing Alaska's statutes in 1962. Because there is no record of a legislative amendment to this effect, we conclude that ERA is probably correct.

ERA infers from this error that the properly disjunctive clause can only be read to ban prospective inheritance as a measure of damages. We disagree. We note that "probable accumulation" is a term of art, and here is a substantive directive against employing a limitation on the measure of damages. Thus, just as without regard to age or probable accumulation were directives not to rely solely on age or loss-to-the-estate measure, without regard to savings during life so far means that it cannot be the sole measure of prospective inheritance. *Compare* M. Ingraham, *Damages for Wrongful Death in Alaska,* 5 Alaska Law Review 293, 309–12 (1988).

477 (1963 & Supps.1979 and 1987); *see also Yowell v. Piper Aircraft Corp.*, 703 S.W.2d 630, 632 (Tex.1986) (and cases cited therein). Thus, we hold that the superior court did not err when it ruled that loss of prospective inheritance is an element of damages in this wrongful death action.

### B) *Eligibility For Prospective Inheritance*

The superior court ruled that Blosser's children were the only persons who could recover loss of prospective inheritance damages. It then held the children could recover only that portion of the residual estate which they could prove they would have inherited. Because Blosser's will left only 50% of his estate to the children, they were only able to prove that they would recover 50% of his "probable accumulation" as prospective inheritance. However, under the superior court's ruling, the other beneficiaries of Blosser's will received no prospective inheritance award.

Consequently, Kulawik asks this court to interpret AS 09.55.580 to allow the estate to recover the entire amount of residual damages. She asks that this court either (1) "modify" the definition of "other dependents" in the statute so as to include the other beneficiaries under the decedent's will as eligible statutory beneficiaries, or (2) "abolish the dichotomy" between recovery by the decedent's estate and recovery by the statutory beneficiaries under AS 09.55.580; i.e., permit simultaneous suits by the estate and the statutory beneficiaries under the act. We reject these suggestions and affirm the superior court.

■ First, classifying the estate as a "statutory beneficiary" is directly contrary to the statutory language. Alaska Statute 09.55.580(a), in pertinent part, provides that

The amount recovered, if any, shall be *exclusively for* the benefit of the decedent's spouse and children when the decedent is survived by a spouse or children, or other *dependents*. When the decedent is survived by no spouse or children or other dependents, the amount recovered shall be administered as other personal property of the decedent but shall be limited to pecuniary loss.

(Emphasis added). Only where no statutory beneficiary survives the decedent may the estate bring suit under the Act. *See Horsford*, 561 P.2d at 727 ("Our Wrongful Death Act explicitly provides for only one instance, namely, when there are no statutory beneficiaries, where the damages recovered are to be administered as part of the decedent's estate."). As we noted in *Horsford*, "if the legislature had intended that wrongful death damages be distributed in all cases as if part of decedent's estate, it would have said so." *Id.*

■ As used in the statute, "other dependents" covers only those individuals who are in fact actually dependent. *Greer Tank & Welding, Inc. v. Boettger*, 609 P.2d 548, 551 (Alaska 1980); *In re Estate of Pushruk*, 562 P.2d 329, 331 (Alaska 1977). This dependency is a question of fact. *Id.* at 331. Kulawik concedes that decedent's ex-wife and girlfriend, despite their recognition in decedent's will, do not qualify as "other dependents."

Kulawik's second proposal, allowing the estate to recover for loss of inheritance even when survivors exist, directly contradicts the mandate of AS 09.55.580(a) that recovery "shall be *exclusively* for the benefit of the decedent's spouse and children when the decedent is survived by a spouse or children, or other dependents." (Emphasis added). *Pushruk* also explains that AS 09.55.580 creates a mutually exclusive dichotomy between estate recovery and beneficiary recovery.

[I]f the decedent is survived by a spouse, child or dependent, the action is brought on behalf of the statutory beneficiary and damages are measured by the loss to the survivors. The personal representative is then a nominal party only and holds the recovery in trust. On the other hand, if the deceased is not survived by the beneficiaries named in the statute, the personal representative is the real party in interest in the wrongful death action. Damages are limited to the loss to the estate and are distributed as other personal property of the deceased.

*Pushruk,* 562 P.2d at 331 (footnote omitted). *See also Tommy's Elbow Room, Inc. v. Kavorkian,* 727 P.2d 1038, 1045 n. 11 (Alaska 1986); *Osborne v. Russell,* 669 P.2d 550, 560 (Alaska 1983).

Therefore, we hold that the superior court did not err in only allowing Blosser's children, David and Sharon, to recover loss of prospective inheritance damages.[17]

### C) *The Amount Of Prospective Inheritance*

Having determined that statutory beneficiaries are eligible to recover probable accumulations under AS 09.55.580, we still must determine the extent of their recovery. The superior court ruled that Blosser's children could recover only that portion of the residual estate which they could prove they would have inherited. The jury calculated Blosser's probable accumulations at $126,024. As noted above, because Blosser's will left only fifty percent of his estate to the children, they were only able to prove that they would have recovered half of his probable accumulations. Hence, each child received an award of $31,506. Because the estate may not recover when there are statutory beneficiaries, ERA was never charged with the remaining $63,012 of Blosser's probable accumulations.

■■■ ERA argues that this is the correct result because the statutory beneficiaries were entitled to only their "actual losses." No language in the statute, however, so limits the recovery of the statutory beneficiaries. Rather, ERA supports its argument with case law citations which are inapposite in this context. Review of our wrongful death statute convinces us that the legislature intended that the statutory beneficiaries recover all of the deceased's probable accumulations.

#### 1. Case law on limitations of damages

We have never decided a case where the contention was made that damages for an estate's loss in excess of the loss suffered by statutory beneficiaries should be recoverable. Dicta in *Horsford* and *Pushruk* indicate that beneficiaries' damages are measured by their personal loss. *See Horsford,* 561 P.2d at 726 ("[D]amages in a wrongful death case are to be assessed according to the actual losses of each qualified surviving beneficiary."); *Pushruk,* 562 P.2d at 331 ("[I]f the decedent is survived by a spouse, child or dependent, the action is brought on behalf of the statutory beneficiary and damages are measured by the loss to the survivors.").[18]

These statements were made in importantly different contexts. In both *Horsford* and *Pushruk,* the amount of damages had been fixed by settlement, and the issue was the distribution, not the measurement, of damages. *Horsford,* 561 P.2d at 724, 725–26; *Pushruk,* 562 P.2d at 330. *Pushruk* held that the decedent's mother was not a dependent and thus the settlement proceeds should be paid to his estate and made available to creditors. *Pushruk,* 562 P.2d at 331. In *Horsford,* there were competing statutory dependents, some of whom argued that distribution should be made according to the laws of intestacy. We rejected this argument, holding that "*allocation* [from the settlement fund] should be *in proportion* to the actual loss suffered by each surviving statutory beneficiary." 561 P.2d at 727 (emphasis added). That holding would control the distribution of the excess $63,012 in this case. The

17. Kulawik argues that the "the passage of time and the radical change in estate and inheritance laws" has rendered the dichotomy of AS 09.55.-580 "unnecessary" and an "archaism." She also asserts that the dichotomy is inconsistent with the broader policy goals of the statute.

The argument has force. Nevertheless, we are not free to disregard the express language of the statute which establishes a clear dichotomy.

18. ERA also cites to *Tommy's Elbow Room,* 727 P.2d at 1046, as holding that damages are limited to actual losses. *Tommy's Elbow Room,*

however, merely held that "AS 09.55.580(c) is not to be construed as [an] open invitation to the jury to award damages for any or all injuries or losses resulting from the death." *Id.* In other words, *Tommy's Elbow Room* recognizes a limit on total damage recovered from the tortfeasor in the context of claims for non-pecuniary damage receivable by the beneficiary. It does not, however, place any limit on the pecuniary damages recoverable by statutory beneficiaries.

question of whether excess estate losses should be awarded has never been decided by our previous cases.

## 2. Damages awardable under the statute

In refusing to limit damages to probable accumulations, the legislature did not require that any other particular method of damage calculation be used. The statute requires that damages "fairly compensate for the injury resulting from the death." AS 09.55.580(c). The six elements of damage enumerated in what is now section As 09.55.580(c) were explicitly not a limitation on the comprehensiveness of this definition. Damages were limited, as they are in the common law of torts, only by the concept of proximate cause. AS 09.55.580(b). Significantly, the act focuses not merely on the individual losses to each beneficiary, but more generally on the entire "injury resulting from the death."

We have previously interpreted our wrongful death act liberally, and considered it to apply rules similar to those employed in the common law of torts. *Tommy's Elbow Room*, 727 P.2d at 1048 ("[A]lthough an action for wrongful death is statutory, we have found no legislative intent to treat it differently than common law tort actions."); *Portwood v. Copper Valley Elec. Ass'n*, 785 P.2d 541, 542 (Alaska 1990) (above language from *Tommy's Elbow Room* quoted and followed); *Haakanson v. Wakefield Seafoods*, 600 P.2d 1087, 1091–92 (Alaska 1979) (We noted our agreement in spirit with cases which "interpret the action as any other tort action."); *Hanebuth v. Bell Helicopters Int'l*, 694 P.2d 143, 146 (Alaska 1984) (above language from *Haakanson* quoted and followed). If David Blosser had merely been

disabled rather than killed, he would have been able to recover as a matter of tort law all the future earnings which he lost as a result of his injuries. Consistent with *Tommy's, Portwood, Hanebuth* and *Haakanson,* the wrongful death act should be construed to afford a similar remedy.

The superior court awarded only half of what David Blosser would have earned and saved. It ruled that the other half, $63,012, may not be recovered. This result is contrary to the approach of our case law requiring that the wrongful death act be interpreted to afford a remedy in parity with the common law of torts.[19] Further, it is contrary to the language of the act, which limits damages only by the common law tort concept of proximate cause, and requires that damages be fairly compensatory for the injury resulting from the death, without specifying that the injury must be suffered by a statutory dependent. Given that the tort proximately caused additional injury to the estate in the amount of $63,012, that sum should be added to the judgment.

Our decision is bolstered by several considerations. First, Alaska's wrongful death act does not specify that the "injury resulting from the death" be the injury to the statutory beneficiaries. This is an omission of particular significance. Lord Campbell's Act, the prototype for most American loss-to-survivor acts, and many acts in American jurisdictions use the same or analogous phrase, "injury resulting from the death." However, it is immediately followed by language stating that the injury for which damages may be awarded is the injury to dependents.[20]

---

**19.** The theme that the legislature did not intend to make it cheaper to kill than to injure was expressed in *Tommy's Elbow Room*, 727 P.2d at 1048; *Portwood*, 785 P.2d at 542–43; and *Hanebuth*, 694 P.2d at 147.

**20.** Lord Campbell's Act states, "the Injury resulting from such Death *to the Parties* respectively *for whom* and for whose Benefit *such Action shall be brought."* 9 & 10 *Vict* Ch. 93, set forth in Speiser, *supra*, app. A at 643 (emphasis added). Similarly, the Arizona statute measures damages with reference to "the injury resulting

from the death *to the surviving parties* who may be entitled to recover." ARS § 12–613 quoted in Speiser, app. A at 651 (emphasis added). Similar limitations appear in the acts of many other jurisdictions, District of Columbia Code § 16–2701; Hawaii Statutes § 663–3; Illinois Rev. Statutes c. 70 § 2. *See* Speiser, *supra,* app. A at 667, 677 and Supp. app. A at 291. The omission of this limiting language following phrasing which Alaska shares with the acts of other jurisdictions is evidence that the limitation was not intended.

Second, interpreting death actions like common law tort actions requires resolving the uncertainty concerning recoverability of additional damages in favor of recovery. If this was a common law tort case, the victim could recover all of her future lost earnings. The most nearly analogous remedy is to permit the recovery of all that the decedent would have earned and saved.

Third, some death acts in other jurisdictions measure damages in whole or in part by the loss suffered by the estate, and nonetheless direct that such damages be paid to statutory beneficiaries. Speiser notes that in a number of states, acts "have been construed to measure damages in certain specified situations by loss to decedent's estate, or in all instances by such loss to the estate, although the damages, once recovered, are distributed directly to the statutory beneficiaries." Speiser, *supra*, § 3:2 at 119–120 (citing statutes of Georgia, Kentucky, North Carolina, and Rhode Island) (other citations & footnotes omitted). Thus, it is in no sense inevitable that wrongful death awards must be defined solely by the personal losses suffered by designated beneficiaries.

Fourth, if the additional loss suffered by the decedent's estate is not awarded, there will be cases where the amount recoverable is unconscionably small in proportion to the actual loss. For example, if the decedent has a high-earnings history, no spouse, and an adult, self-sufficient child, the personal loss to the adult child is likely to be insubstantial apart from his or her lost inheritance. The loss to the estate, on the other hand, may be in the millions of dollars. If the decedent has willed most or all of his or her estate to someone other than the adult child, the great bulk of this tangible loss will not be recoverable.[21]

For the reasons stated above, we hold that, on remand, the superior court should award to the personal representative of the statutory beneficiaries the entire amount determined by the jury to be Blosser's probable accumulations. The court must also reconsider its prior award of costs and attorney's fees.[22]

## V. NEW TRIAL

Kulawik appeals the superior court's refusal to grant a new trial. The crux of Kulawik's argument is that the jury "callous[ly] refus[ed]" to "acknowledge the extent of grief and emotional distress suffered by" the children and therefore returned a "shockingly low" sum of $20,000 to David and $15,000 to Sharon as recompense for their sorrow and distress.[23] Ku-

---

21. Admittedly, under our decision here, the statutory beneficiaries receive a windfall when they recover damages which otherwise would have gone to the estate. Under a model statute, one would expect to see the additional loss suffered by a decedent's estate paid to the estate so that the decedent's creditors and heirs or devisees may be compensated for what they have lost. Speiser, *supra*, § 15:12 at 484.

However, our statute is not a model act. It explicitly directs that the recovery be distributed to the statutory beneficiaries where they exist.

The policy choice, therefore, comes down to whether it is better that the dependents of the decedent or the tortfeasor receive the windfall.

22. This result will increase the total damage award to the Blosser children by $63,012, thereby bringing the total award to a figure higher than ERA's pretrial offer of judgment. This renders moot both Kulawik's argument that ERA's offer was invalid and ERA's cross-appeal contention that the superior court used the wrong schedule when computing attorney's fees.

23. These figures represent only part of the children's total recovery. The jury awarded the following aggregate sums:

Sharon:

| | |
|---|---|
| Loss of support | $ 59,000 |
| Loss of inheritance | $ 31,506 |
| Past medical expenses | $ 9,000 |
| Loss of assistance | $ 5,000 |
| Loss of consortium | $ 80,000 |
| Loss of prospective training/education | $ 20,000 |
| Sorrow, distress | $ 15,000 |
| **TOTAL** | **$219,506** |

lawik further contends that the jury verdict was inadequate with respect to its award for the children's psychiatric care.

Both children received extensive psychiatric treatment. Without setting forth in detail each specific malady and its subsequent treatment, the record indicates that the hardships and turbulence of adolescence affected these two children immensely. Kulawik admits that Sharon "did have emotional problems prior to her father's death." The jury heard evidence of Sharon's forced admission into a psychiatric hospital, drug and alcohol abuse, and poor academic performance, all occurring before her father's death.

ERA does not dispute that Sharon may have suffered additional mental anxiety due to her father's death. Rather, ERA argues that (1) Kulawik's witnesses lacked credibility and the jury rightfully afforded them "little or no weight" and (2) that the jury concluded that ERA was not the proximate cause of the bulk of the children's emotional disturbances and concomitant psychiatric care expenses. Indeed, ERA points out preexisting conditions testified to by witnesses,[24] all of which support the jury's verdict. Accordingly, ERA asserts that "the jury had an ample evidentiary basis for concluding that the medical expenses claimed were not attributable to the death of Mr. Blosser," and hence, to ERA's negligence.

■■■■■ Authority to grant or deny a new trial rests within the discretion of the trial court. *Buoy v. ERA Helicopters, Inc.*, 771 P.2d 439, 442 (Alaska 1989). This court will review the refusal to grant a new trial under an abuse of discretion standard. *Alyeska Pipeline Serv. Co. v. Beadles*, 731 P.2d 572, 573 (Alaska 1987). We will not interfere with the trial court's exercise of discretion except in the most exceptional circumstances in order to prevent a miscarriage of justice. *Ahlstrom v. Cummings*, 388 P.2d 261, 262 (Alaska 1964). An abuse of discretion exists when "evidence to support the verdict was completely lacking or was so slight and unconvincing as to make the verdict plainly unreasonable and unjust." *Id.* We will review the record in the light most favorable to the non-moving party, *Hayes v. Xerox Corp.*, 718 P.2d 929, 933 (Alaska 1986), in this case ERA. Based on our review, we affirm the superior court's denial of Kulawik's motion for a new trial.

■■■■■ First, Sharon's and David's awards of $15,000 and $20,000 respectively, for anxiety and distress due to the negligence of ERA, are supported by the record and do not amount to a miscarriage of justice, especially in light of the substantial total award made by the jury: $219,506 to Sharon and $342,706 to David. Secondly, the jury may have questioned the credibility of Kulawik's witnesses and therefore discounted their testimony. In addition, there is substantial evidence in the record indicating that the children had preexisting psychological problems. Hence, the jury may have reasonably attributed only a portion of the children's medical costs to ERA's negligence. This verdict is not so "plainly unreasonable and unjust" that we can con-

David:

| | |
|---|---|
| Loss of support | $140,800 |
| Loss of inheritance | $ 31,506 |
| Past medical expenses | $ 2,900 |
| Loss of assistance | $ 7,500 |
| Loss of consortium | $100,000 |
| Loss of prospective training/education | $ 40,000 |
| Sorrow, distress | $ 20,000 |
| **TOTAL** | $342,706 |

**24.** ERA notes that the jury heard testimony to the effect that other factors present before the death of the father may have been the proximate cause of the children's emotional instability. In fact, ERA listed six specific factors, each supported by the record which support the jury award and implicit finding that not all of the children's psychiatric bills were attributable to ERA's negligence.

clude that it was a miscarriage of justice. *Ahlstrom*, 388 P.2d at 262. Thus, we hold that the superior court did not abuse its discretion when it denied Kulawik's motion for a new trial.

AFFIRMED in part; REVERSED in part; REMANDED for proceedings consistent with this opinion.

MATTHEWS, C.J., concurs.

BURKE, J., dissents in part.

MATTHEWS, Justice, concurring.

I agree with the majority opinion in all respects. I write separately merely to state additional reasons in support of the conclusion that damages for loss of prospective inheritance are recoverable in cases where there are statutory beneficiaries.

When the territorial death act was enacted by Congress in 1900, it said nothing about how damages should be measured. It stated only that damages should be capped at $10,000 and directed how they should be distributed. If this statute had never been amended it would be difficult to argue that loss of inheritance damages were not recoverable, as that is the overwhelming majority rule in American jurisdictions. 3 M. Minzer, *Damages in Tort Actions*, § 22.22 (1991).

When the territorial legislature amended the death act in 1955, it said nothing which would take away the implied right to recover lost inheritance damages.[1] The only language limiting the measure of damages—as distinct from the cap which the legislature raised from $10,000 to $50,000—is contained in the following two sentences:

The damages recoverable under this Act shall be limited to those which are the natural and proximate consequence of the negligent or wrongful act or omission of another.

In fixing the amount of damages to be awarded under this Act, the court or jury shall consider all the facts and circum-

stances and from them fix the award at such sum as will fairly compensate for the injury resulting from the death.

The general standards expressed in this language are clearly broad enough to encompass lost inheritance damages. The sentence which immediately follows this language is explicitly not a limitation on these general principles. It states in part:

In determining the amount of the award, the Court or jury shall consider *but is not limited to* the following:

(1) Deprivation of the expectation of pecuniary benefits to the beneficiary or beneficiaries, without regard to the age thereof, that would have resulted from the continued life of the deceased and *without regard to probable accumulations or what the deceased may have saved during his lifetime.*

(Emphasis added.) The juxtaposition of "but is not limited to" with the "without regard to probable accumulations" phrase seems, at first glance, to be paradoxical. How can "without regard to probable accumulations" not be a limitation on the recovery of pecuniary benefits?

The most plausible explanation is that the legislature wanted to put an end to the argument that the measure of damages in cases with dependents was limited to what the probable accumulations or savings of the deceased would have been had he lived a normal life expectancy. This contention was a recurrent feature of litigation under the 1900 statute. *Dralle v. Steele*, 13 Alaska 680, 685 (1952) (argument rejected); *Kreidler v. Ketchikan Spruce Mills*, 10 Alaska 365, 367 (1943) (argument accepted); *The Princess Sophia*, 35 F.2d 736, 740 (W.D.Wash.1929) (applying Alaska law, argument accepted).

There were, and are, several formulas in general use for determining the loss suffered by an estate. The two most common are the net earnings method and the accumulations or savings method.[2] Under the

---

1. The 1955 enactment is set forth in the majority opinion at footnote 14, at 633.

2. We discussed the two methods in *Osborne v. Russell*, 669 P.2d 550, 560 (Alaska 1983). *See*

Minzer, *supra*, § 23.11[1]; S. Speiser, *Recovery for Wrongful Death*, § 3.62 (1975); Harper and James, *The Law of Torts*, § 25.15 (1956). At least two states, Georgia and Kentucky, employ

net earnings method, the decedent's personal living expenses are deducted from probable future gross earnings. Personal living expenses do not include amounts that would have been spent for other family members. Minzer, *supra*, § 23.11; Harper and James, *supra*, § 25.15. The result is then reduced to present value and represents the damage award. The net earnings method ordinarily approximates that which is recovered under a loss to survivors statute where the decedent is an adult with dependents.[3] Under the accumulations formula, the amount that the deceased probably would have saved during his lifetime is calculated, reduced to present worth, and awarded. The main difference between the two methods is that under the accumulations formula a deduction is made for the amounts decedent would have spent to support his dependents. *Osborne v. Russell*, 669 P.2d 550, 560 (Alaska 1983). Minzer, *supra*, § 23.11; Harper and James, *supra*, § 25.15.

The accumulations method has long been criticized on the ground that it fails to provide compensation for that part of a decedent's lost future earnings that would have been paid to support his dependents. Harper and James puts it this way:

> [I]t will fall far short of providing compensation to the living dependents for their loss, and this is the loss that calls loudest for redress. Moreover, the lack will prove greatest where the need is most acute—the typical case of the bre-

adwinner who spends most of his earnings on his dependents and therefore is able to save little.

*Id.* at 1333.

Speiser's comments are similar:

> The net effect of the "accumulations only" approach is undesirable. The tortfeasor has deprived the decedent of his capacity to earn money which he would have contributed to his dependents and has deprived the dependents of their potential support and contributions from the decedent. But the "accumulations" theory neither recognizes this loss nor requires the tortfeasor to compensate for it.

Speiser, § 3.63 at 371. Although Harper and James was published in 1956, and Speiser in 1975, there are numerous cases which recognized the inequity of the accumulations formula prior to 1955.[4]

The accumulations/net earnings dichotomy is classically present where damages are measured by the loss to the estate rather than by the losses suffered by beneficiaries. However, cases construing Alaska's wrongful death act as of 1955 were not uniform in limiting the accumulations method to cases where the deceased had no statutory beneficiaries. In *Kreidler v. Ketchikan Spruce Mills*, 10 Alaska 365, 367 (Alaska 1943), and *The Princess Sophia*, 35 F.2d 736, 740 (W.D.Wash.1929), the decedents had beneficiaries, but the accumulations or savings method was used

---

a third method, gross earnings. Minzer, *supra*, § 23.11[1][c].

**3.** "This method most nearly approximates that under Lord Campbell's Act and its progeny." Harper and James, *supra*, § 25.15 at 1332. " '[T]he net income' formula produces a recovery that most closely resembles the recovery in a 'loss to beneficiaries' jurisdiction." Minzer, *supra*, § 23.11[1] at 23–12. This method was approved as a means of determining sums available for beneficiaries in *Tommy's Elbow Room v. Kavorkian*, 727 P.2d 1038, 1047 (Alaska 1986).

**4.** *E.g., Chase v. Fitzgerald*, 132 Conn. 461, 45 A.2d 789 (1946); *Imbriani v. Anderson*, 76 N.H. 491, 84 A. 974 (1912); *Carter v. North Carolina R. Co.*, 138 N.C. 750, 52 S.E. 642, 643–44 (1905) (the court stated in support of a net earnings method "[b]ut a small number of men accumulate estates. Their income or earnings, after

paying their actual personal expenses, are expended in the support and education of their children. Certainly, it was not contemplated that for wrongfully causing the death of such a man no damage could be recovered, although his death deprives his family of their sole support, while for the death of one without any family, or who, by miserly living and hoarding, deprives his family of support and education, large damages should be awarded. It cannot, with any show of truth, be said that in the first case the family sustained no pecuniary loss by reason of the death of the husband and father. Such a construction of the statute would place beyond the protection of the law nine-tenths of the people."); *see* Annotations, 163 A.L.R. 253, 257 (1946); 26 A.L.R. 593, 595 (1923); 7 A.L.R. 1314, 1325–26 (1920).

in both.[5]  Thus, it is not surprising to see the legislature rejecting the probable accumulations method when calculating lost benefits to a statutory beneficiary.

BURKE, Justice, dissenting in part.

I respectfully disagree with the court's treatment of the issue of "prospective inheritance."  Alaska Statute 09.55.580(c)(1) (1983 & Supp.1990) plainly precludes consideration of a decedent's possible future accumulations for purposes of determining damage awards in wrongful death suits brought by statutory beneficiaries.  The statute, therefore, effectively bars any recovery of damages for loss of prospective inheritance.

Alaska Statute 09.55.580(c)(1) (1983 & Supp.1990) states partly that a jury, in awarding damages, must consider the loss of "expect[ed] ... pecuniary benefits" to the beneficiaries.  This provision, however, contains its own limitation.  Such consideration is to be given *"without regard to probable accumulations of what the deceased may have saved during his lifetime."*[1]  Because I can think of no feasible way to calculate a decedent's prospective estate without necessarily considering the "probable accumulations" of his "sav[ings] during his lifetime,"[2] I conclude that the

words of the statute, given their plain and ordinary meaning, preclude an award of damages for prospective inheritance.

It is true that, even when a statute appears plain on its face, we will consider evidence tending to demonstrate a legislative intent contrary to the one indicated by the statute's language.  *See Alaska Public Employees Ass'n v. City of Fairbanks,* 753 P.2d 725, 727 (Alaska 1988); *State v. Alex,* 646 P.2d 203, 208–09 & n. 4 (Alaska 1982); *State, Dep't of Natural Resources v. City of Haines,* 627 P.2d 1047, 1049 & n. 6 (Alaska 1981).  However, we must be "mindful that the plainer the language, the more convincing contrary legislative history must be."  *Alex,* 646 P.2d at 209 n. 4 (quoting *United States v. United States Steel Corp.,* 482 F.2d 439, 444 (7th Cir.), *cert. denied,* 414 U.S. 909, 94 S.Ct. 229, 38 L.Ed.2d 147 (1973)).  Here, in my judgment, the "history" which supports the opinion of the court falls short of the required mark.

35 F.2d at 740.

---

**5.**  A particularly harsh statement was made in the *Princess Sophia:*

> What has been said with relation to the rule of recovery forces the conclusion that under the Alaska statute increased costs of living to the widow ... comfort, love, consolation, and affection to the bereft, the financial responsibility of the petitioner, equal distribution of justice, or dictates of humanity would not warrant the court in finding a pecuniary loss where none is shown by the evidence.  The court could not in good conscience say that a party 35, 40, 50, or 60 years of age, or any age, who has not shown some result of saving and saving habit and position of expectancy, in all reasonable probability, would leave an estate of present worth at the end of life expectancy.  Health, earning capacity, and employment, contributions to charity, or "living well," being a "good fellow," without some evidence of accumulation and saving habit, does not create a presumption of itself to support such finding.

**1.**  Because this language operates as an express limitation on one of the *enumerated* measures of damage in AS 09.55.580(c), I reject Kulawik's contention that damages for loss of prospective inheritance may be allowed under the "not limited to" clause contained in that section.  *Cf. Tommy's Elbow Room v. Kavorkian,* 727 P.2d 1038, 1047 (Alaska 1986) (although not expressly enumerated in AS 09.55.580, statutory beneficiaries permitted to recover damages for their "anguish, grief and suffering").

**2.**  Damages for loss of prospective inheritance cannot be determined without first determining the amount likely to be in a decedent's estate at the time of death, had the death been due to natural causes.  This figure is determined by calculating "the net savings which the [decedent] would have accumulated ... at the expiration of his life expectancy."  *Macey v. United States,* 454 F.Supp. 684, 686 (D. Alaska 1978).