*In the Matter of the Estate of*
*Abriana Lynn TSINAHNAJINNIE*
Deceased
*Yaas Tso Tshinahnajinnie and Meske Tshinahnajinnie*
Appellants
*vs.*
*Rachel John*
Appellee

In the Supreme Court of the Navajo Nation

No. SC-CV-80-98

January 31, 2001

Gary L. Thomas, Esq., Kykotsmovi, Arizona, for the Appellants

Warren Denetsosie, Esq., Window Rock, Navajo Nation (Arizona), for the Appellee.

Before YAZZIE, Chief Justice, *HOLGATE and *FERGUSON, Associate Justices (*by designation).

Opinion delivered by YAZZIE, Chief Justice.

This is an appeal from the Window Rock Family Court, sitting in probate. This case involves the claims of the natural parents of a one and one-half year old child who was killed in a parking lot automobile incident. The parents dispute the distribution of the insurance proceeds to settle the claims against the driver who killed the child.

## I

Abriana Tsinahnajinnie, the deceased Navajo child, was the daughter of Rachel John and Yaas Tso Tsinahnajinnie. She died on February 3, 1996 in the parking

lot of the Church of Jesus Christ of Latter Day Saints in Saint Michaels, Navajo Nation (Arizona), when she ran into or under a pickup truck driven by David Yazzie, which was leaving the parking lot. Rachel John commenced an action in the Window Rock Family Court to probate the child's estate and was appointed as its administratrix on May 8, 1996. She then filed a wrongful death suit against David Yazzie in the Window Rock District Court on May 15, 1997. Rachel John, the surviving parent, brought the suit as the personal representative of the estate of Abriana Tsinahnajinnie. The probate proceeding was stayed pending the completion of the wrongful death lawsuit.

On April 19, 1998, Ms. John filed a Notice of Settlement of the death claim with the district court, together with a "Stipulation of Dismissal with Prejudice." The parties to the settlement agreement included defendant David Yazzie, Truck Insurance Exchange (Yazzie's insurer), All Indian Enterprises (Yazzie's employer), Ron Prows Construction, Inc., and other parties. It provided that $100,000 be paid to Ms. John as the estate's personal representative, and other payments be made to Ms. John's other child, the decedent's surviving half-sister, for her future education.

Ms. John reactivated probate proceedings by filing a "Supplement to Report and Final Inventory" and asked the family court to accept the settlement. Yaas Tso Tsinahnajinnie, decedent's father, refused to sign the district court settlement agreement because he did not get a share of the $100,000 and Meske Tsinahnajinnie, also a half-sister of the decedent by another woman, did not get an educational annuity. Ms. John asked the family court, sitting in probate, to approve the settlement agreement and distribute the insurance proceeds as the sole asset of the decedent's estate.

Yaas Tso Tsinahnajinnie wants Ms. John removed as the administratrix on the ground that she did not act in good faith when negotiating the settlement by not including him as the natural father and decedent's half-sister Meske Tsinahnajinnie. He now claims one-fourth of the insurance proceeds and requests that he be appointed as the administrator of the estate.

Because of the foregoing dispute, the family court held a hearing to decide how to distribute the insurance proceeds. The court ruled that neither Yaas Tso Tsinahnajinnie nor Meske Tsinahnajinnie is entitled to the insurance proceeds. The family court also denied the motion to remove Ms. John as the administratrix, but approved the settlement agreement and the final report and proposed distribution.

As to the distribution of the insurance proceeds, which favors Ms. John, the family court based its decision on the following facts. Ms. John and Yaas Tso Tsinahnajinnie are not married. Ms. John was the sole support of her child from birth. The sole source of income for child support came from the mother, the father did not pay child support.

Yaas Tso was not present when the child was born. He lived with Ms. John

(the mother) and their child for only one month and then moved out of her life. Ms. John allowed the father access to his daughter at all times. At no time did she refuse him to see their child. The decedent did not have daily contact with Meske, the decedent's half sister by another woman, and met her only once.

Yaas Tso Tsinahnajinnie contends that unless the insurance proceeds are actually paid, such cannot be considered as "assets." He also contends that the family court abused its discretion in refusing to remove Ms. John as the administratrix or personal representative of the estate. Ms. John reasserts that the insurance proceeds are in fact assets of the child's estate, that the tort action was settled in good faith, and that the insurance proceeds be distributed as the sole assets of the estate.

## II

The issues before this Court are: 1) What is the proper procedure to assert claims on behalf of survivors of decedents in the Navajo Nation Courts? 2) Did the family court correctly apply the "immediate family" rule for distribution of the insurance proceeds in this case? 3) Did the family court abuse its discretion by refusing to remove Rachel John as the estate's administratrix or personal representative?

## III

At the outset, we are faced with the appellants' contention that since this was a wrongful death action, the proper parties are the decedent's survivors, and the insurance proceeds should not have been made a part of the deceased child's estate. The confusion over what cause of action applies and who the beneficiaries of that action should be arises because the Navajo Nation does not have wrongful death or survivor's action statutes. Under the rules of English common law, no action could be brought on behalf of a deceased person because personal tort actions died with the decedent, and no action could be brought by the decedent's survivors for the same reason. PROSSER AND KEETON ON THE LAW OF TORTS, §§125A-127 (5th ed. 1984). This deficiency has been cured in all states by specific legislation which permits a "survival action" on behalf of a decedent to sue for the decedent's damages (e.g., pain and suffering before death) and an action by a decedent's survivors for their damages (a "wrongful death" claim).

The Window Rock District Court rejected the claim that since the Navajo Nation has neither a survival nor a "Lord Campbell's Act," that the English common law rules cited above apply. In the case of *Benally v. Navajo Nation*, 5 Nav. R. 209 (W. R. Dist. Ct. 1986), the court ruled that Navajo common law permits a wrongful death action despite the lack of a wrongful death statute.

To clarify these questions, we hold that 7 N.N.C. §701 (1995), which addresses judgments, permits all causes of action generally recognized by law to compensate an "injured party," including survival and wrongful death actions. Our holding is reinforced by the provisions of 7 N.N.C. §255 (1995),

which provides that "[t]he district courts shall have the power to issue any writs or orders necessary and proper to the complete exercise of their jurisdiction." The drafters of our judicial code had the foresight to provide that all actions involving an "injured party" require the compensation outlined in 7 N.N.C. §701 and to provide that once a Navajo Nation court has jurisdiction over the person, there is general subject matter jurisdiction to provide relief based upon any generally-recognized legal theory. As we have said before, the Navajo Nation courts are courts of general jurisdiction, and all actions which are generally recognized in the United States are available in the Navajo Nation. *Brown v. Todacheeney*, 7 Nav. R. 37 (Nav. S. Ct. 1992). There is only one cause of action in the Navajo Nation, and that is the "civil action," with rules of civil procedure "to serve the just, speedy, and inexpensive determination of every action." Nav. R. Civ. P. 1.

Now that we have clarified that there is a cause of action for a wrongful death, we next examine the procedural aspects. Ms. John's attorneys apparently chose to pursue a wrongful death action, because the suit was brought by "the personal representative of the estate of Abriana Tsinahnajinnie, on behalf of the surviving parents." That was an action brought for the survivors of the deceased child and not one to assert any injury suffered by the child prior to her death (survivor's action). Given that this suit was not a survivor's action, it was not properly part of the estate. The right of a decedent to bring a "chose in action" can be part of an estate, but that was not the situation here. We recognize that there are widespread practice customs in the American legal community, and one of them is to open an estate for a decedent to have a personal representative bring a claim, whether it is a survival action or a wrongful death suit. The appellants are correct that, strictly speaking, this was a wrongful death action to secure the survivors' damages, and thus, the insurance proceeds were not properly part of the child's estate. However, that does not defeat the ultimate judgment of the family court here. In a similar case, a personal representative brought both a wrongful death and a survival action as the special administratrix of an estate for the use and benefit of survivors. The Alaska Supreme Court upheld a similar settlement, ruling that the settlement theory did not matter, since the beneficiaries were also the decedent's heirs. *Mitchell v. Mitchell*, 655 P.2d 748 (Alaska 1982). *See also, Kulawik v. Era Jet Alaska*, 820 P.2d 627 (Alaska 1991) (wrongful death including "loss-to-the-estate" damages).

For future guidance, we hold that it is not necessary to open a probate case to appoint an administrator or administratrix[1] for wrongful death claims. Any person who has a claim can bring his or her own claim. There is the special case of actions on behalf of children. Such actions can be brought by a parent as a next friend, through a special guardianship, or, where such is required to protect the

[1] The Navajo Nation Probate Code at 8 N.N.C. §§1-3 (1995), uses the old gender-related terms, administrator and administratrix, for intestate estates, while the Uniform Probate code uses the gender-neutral "personal representative." The powers and duties of all three are the same.

interests of a minor, obtain the approval of the family court in a guardianship action after a judgment or settlement.

## IV

In this case, the procedure does not matter. Whether the damages are viewed as those of the survivors in a wrongful death action or whether they were to be distributed as part of an estate, the result is the same. The family court applied a rule of Navajo common law that insurance proceeds should be distributed to the "immediate family."[2] This rule, as it is applied to distribution of an estate without a will, under Navajo custom, states that non-producing property (i.e., money) should go to the "immediate family." *In the Matter of the Estate of Boyd Apachee*, 4 Nav. R. 178, 182-183 (W. R. Dist. Ct. 1983).

In applying the "immediate family rule" to the proposed estate distribution, neither Yaas Tso Tsinahnajinnie nor Meske Tsinahnajinnie suffered any damages as survivors; they had no connection with the decedent. The family court's exclusion of these appellants is correct. Yaas Tso Tsinahnajinnie had no claim because he provided little or no care or support for his own daughter. As the Navajo common law maxim states, "he just stole the child." *Tom v. Tom*, 4 Nav. R. 12, 13 (Nav. Ct. App. 1983). Viewed as either a Navajo common law case or one arising in equity, this father simply sought to benefit from his child's death. He did not even attend her birth, nor give material or emotional support to her, nor seek to be a part of her life.

Although the father had every opportunity to be with his child, and reasonable demands were made upon him for child support, he simply was not around. As Judge Tom Tso so aptly stated in *Apache v. Republic National Life Insurance Company*, this man hid behind the hogan waiting for the corn crop to be harvested, when he did nothing to help grow that crop. 3 Nav. R. 250, 254 (W. R. Dist. Ct. 1982). The conclusion that someone cannot benefit from the work of others without contributing to the end product is a matter of common sense, and our rules of Navajo common law are, at end, "Navajo common sense." The same holds true of Meske Tsinahnajinnie as a half-sister. Through no fault of her own, she had no connection with the decedent, and not having shared in her life, cannot benefit from payments for her death.

At the time of hearing, we were concerned about the ethical and fiduciary responsibilities of the estate's attorney and administratrix. They brought the wrongful death suit 'on behalf of ... Yaas Tso Tsinahnajinnie," but settled without his approval and over his strong objection. We were advised at oral argument that Mr. Tsinahnajinnie was told of the conflict of interest and advised to seek his own counsel to assert his claims.

A personal representative who brings a wrongful death action on behalf

2 The other "immediate family" rule, which is used to determine whether an oral will is valid or not does not apply here. *See In re Estate of Thomas*, 6 Nav. R. 51 (Nav. Sup. Ct. 1988).

of heirs is a nominal party and that person holds the recovery in trust for the named beneficiaries. Nav. R. Pro. 4. *See also, Mitchell v. Mitchell*, 655 P.2d 745 (1982). The question, then, is what trust or fiduciary obligation Ms. John owed to Yaas Tso Tsinahnajinnie, a named beneficiary, and to Meske Tsinahnajinnie, who was not a named beneficiary. As the family court found, there was no obligation. Yaas Tso Tsinahnajinnie had no claim to any future earnings or accumulation by the deceased child, given his lack of involvement with her, and no damages arising from her wrongful death. Meske Tsinahnajinnie, the surviving half-sister by another woman, likewise had no expectation or interest in the deceased child's estate.

There are times when a trial court may make the correct decision for the wrong reason. This is one such instance. The appellants correctly argue that in a wrongful death action, the claims and damages are those of the survivors and the proceeds are not part of the decedent's estate. However, there would have been no change in the outcome of this case. The family court is simply a division of the district court. *In re Harvey*, 6 Nav. R. 413 (Nav. Sup. Ct. 1991). It did not matter whether the family court judge was sitting on the law side in district court or in equity in the family court; the result would have been the same.[3] If there was error by the family court, it was harmless.

## V

The family court did not abuse its discretion in refusing to remove Ms. John as the administratrix of the estate. The court's determination is supported by Rule 4 of the Navajo Rules of Probate Procedure which provides "[t]he administrator or executor of an estate is a trustee for the benefit of the heirs and creditors of the estate." Our standard of review is whether there was an abuse of discretion. Given that the family court found that the appellants were not the "heirs" of the decedent in terms of being members of that person's "immediate family," and given that the family court found that the administratrix did not abuse her power in settling the wrongful death action, we sustain the court's ruling. Our concerns regarding appellee's ethical and fiduciary duties were addressed when we learned that the potential conflict of interest was fully disclosed to the appellant father and he had an opportunity to intervene to protect his own interests and those of his child.

## VI

The judgment of the family court is affirmed and this cause is remanded for the administratrix to receive the proceeds of the settlement and distribute the same. The Window Rock District Court is hereby ordered to enforce the Window Rock Family Court decree and do whatever is necessary to receive the settlement proceeds so that the actions in both courts can be closed.

3 We recognize that by the adoption of the generally-accepted rules of civil procedure there is only one "civil" cause of action. However, old habits die hard, and the bench and bar still popularly maintain the distinction when they speak about the powers of the two court divisions.