Argued July 15, reversed and remanded September 28, 1926, rehearing denied January 11, 1927.

## JAMES D. GILLILAN, ADMR., *v.* PORTLAND CREMATORIUM ASSOCIATION.

(249 Pac. 627.)

**Negligence—Absence of Direct Evidence as to What Caused Marble Slab to Fall Held not to Preclude Recovery.**

1. In action for death of plaintiff's decedent, alleged to have been caused while lifting a marble slab in a crematorium, which had fallen on her son, that there was no direct evidence as to what caused slab to fall did not preclude a recovery, if from all facts and circumstances a reasonable inference might be drawn that its falling was due to failure of defendant to exercise due care.

**Negligence—Doctrine of Res Ipsa Loquitur Held Applicable to Fall of Marble Vault Slab in Crematorium.**

2. Relatives of dead, visiting crematorium, which was open to public, were there on implied invitation, and doctrine of *res ipsa loquitur* applied to fall of marble vault slab.

———————

2. See 20 R. C. L. 191.

**Negligence—Jury Could Deduce from Circumstances That Marble Vault Slab Fell as Result of Crematorium Proprietor's Negligence in Securing It (Or. L., § 793).**

3. As fall of marble vault slab in crematorium was such as in ordinary course of things did not happen if due care was exercised, jury could deduce from facts proved, in view of Section 793, Or. L., the reasonable inference that the slab fell as a result of proprietor's negligence in securing or fastening it.

**Negligence.**

4. In action for mother's death, caused by attempting to lift marble vault slab falling on child, crematorium proprietor's negligence *held* for jury.

**Negligence—Mother's Death, Due to Attempt to Lift Marble Slab Falling on Child, Held Actionable, if Defendant Crematorium Proprietor Might Reasonably have Anticipated Injury.**

5. In action for death of plaintiff's intestate, caused by attempting to lift marble slab at crematorium which had fallen on her son, plaintiff might recover if there was evidence tending to show defendant might reasonably have anticipated that some person rightfully in its place of business would be injured if slab fell.

**Death—Whether Negligence of Crematorium Proprietor in Permitting Marble Slab to Fall was Proximate Cause of Death of One Injured in Attempting to Lift It Held for Jury.**

6. In action for death of plaintiff's intestate, claimed to have injured herself when attempting to lift marble slab at crematorium which had fallen on her son, whether defendant's negligence in permitting slab to fall was proximate cause of intestate's death *held* for jury.

**Negligence.**

7. Unless facts are undisputed, question of proximate cause is for jury.

**Negligence.**

8. Where evidence is conflicting, and different reasonable inferences can be drawn as to what caused injury, question of proximate cause is for jury.

**Death—Award of $2,500 for Death of Mother of Three Children Sustained.**

9. Evidence that woman thirty-eight years of age was married and mother of three children, healthy and vigorous, and that she earned about $400 a year, and that a boarder paid her $35 per month, and that it would cost about $50 per month to secure a competent woman to take care of the children, *held* to warrant conclusion that pecuniary net loss sustained by her estate by her death was $2,500.

---

8.  See 22 R. C. L. 148.

**Death.**

10. Much must be left to discretion of jury in determining amount of damages for death.

**Trial.**

11. In action for death, that court permitted plaintiff to reopen case twice for purpose of offering additional evidence relative to question of damages *held* not an abuse of discretion.

**Evidence.**

12. Hypothetical questions to expert witnesses must be based on evidence in the record.

**New Trial—Reduction of Damages for Death Held Unauthorized and Erroneous (Const., Art. VII, § 3c).**

13. While under Constitution, Article VII, Section 3c, Supreme Court can, where material error exists in a record, retry the case and render such judgment as should have been rendered, such authority is not vested in Circuit Court, and it was error for that court to reduce damages for death on motion for new trial, especially where there was no material error.

---

Appeal and Error, 4 **C. J.**, p. 968, n. 31 New, p. 1033, n. 37, p. 1160, n. 51.

Death, 17 **C. J.**, p. 1325, n. 95, p. 1344, n. 94.

Evidence, 22 **C. J.**, p. 83, n. 54, p. 728, n. 73; 23 **C. J.**, p. 54, n. 16.

Negligence, 29 **Cyc.**, p. 453, n. 86, 87, p. 495, n. 61, p. 590, n. 92, p. 591, n. 93, 94, 95, p. 593, n. 6, p. 623, n. 7, p. 636, n. 72, p. 639, n. 4.

Trial, 38 **Cyc.**, p. 1360, n. 52.

From Multnomah: J. U. CAMPBELL, Judge.

Department 2.

This is an action to recover damages for death of plaintiff's intestate alleged to have been caused by the negligence of defendant. On April 24, 1922, Monta S. Gillilan and her son, four years of age, went to the crematorium operated and owned by defendant company in the City of Portland, for the purpose of placing flowers and otherwise decorating the crypt or vault in which the body of her father was entombed. While she was thus engaged, her small son went around the corner of the aisle where other vaults were

---

10. See 8 **R. C. L.** 871.

located. Suddenly the piercing screams of a woman were heard by visitors in the building and they rushed to the place where the mother was desperately trying to lift a large marble vault shutter, weighing about 300 pounds, which had fallen and pinned her boy to the floor. After some difficulty the marble slab was lifted and the child extricated from its perilous position. The boy sustained no injuries, as two large bronze ornamental handles on the sides of the shutter extending out from it about four inches had prevented him from being crushed.

It is alleged that, when plaintiff's intestate observed the dangerous position of her child, she immediately hastened to his aid and, in attempting to lift and remove the marble slab, "so strained, ruptured, and injured her body and the muscles and blood vessels," that death followed on July 4, 1922, as the direct and proximate result thereof. It is charged as negligence that "defendant placed said marble slab in said crypt or vault in such a careless and dangerous manner that the same was insecure and liable to fall." Defendant denies the charge of negligence and that the estate has sustained damage. As a further and separate answer and in explanation of what caused the marble slab to fall, defendant alleges:

"That * * while the said plaintiff's intestate was engaged in decorating the said crypt or vault containing the body of her deceased father, the plaintiff's intestate allowing said child to leave her and go in other parts of said building, and that the said child in passing one of the vaults, into the entrance of which a marble slab was fastened by means of wooden wedges, the said child climbed upon a ledge near the opening of said vault, and pulled upon one of the handles of said marble slab and as a result of the pulling by said child upon the handle of said slab the said

slab became dislodged and one end of the same toppled over to the floor beneath, the upper part of same remaining upon said ledge above referred to.''

Defendant further alleges in substance that death of plaintiff's intestate was not caused as alleged in the complaint, but by cancer of the stomach.

A verdict of $2,500 in favor of plaintiff was rendered and judgment entered accordingly. Defendant's motion for a new trial was denied but the court *sua sponte* reduced the amount of the judgment to $1,260.

Defendant appeals assigning certain error hereinafter mentioned, and plaintiff files a cross-appeal asserting error in setting aside the original judgment.

REVERSED AND REMANDED.    REHEARING DENIED.

For appellant there was a brief over the name of *Messrs. Joseph, Haney & Littlefield,* with an oral argument by *Mr. E. V. Littlefield.*

For respondent there was a brief and oral arguments by *Mr. Thomas Mannix* and *Mr. Dan E. Powers.*

BELT, J.—1. Defendant asserts there is no evidence of negligence and that its motion for a directed verdict should have been allowed. It is true there is no direct evidence as to what caused the marble shutter to fall, but this does not preclude recovery if, from all of the facts and circumstances surrounding the accident, a reasonable inference may be drawn that its falling was due to the failure of the defendant to exercise due care. The argument that there is no evidence the slab even fell does not impress us as worthy of much consideration in view of defendant's allegations that the "child climbed upon a ledge near

the opening of said vault, and pulled upon one of the handles of said marble slab * * and one end of same toppled over to the floor beneath." It is difficult to believe the defendant permitted this shutter to remain on the floor and that this small boy crawled under it in such manner that it required the strenuous efforts of three or four persons to get him out from under it. It is certain that the shutter fell. The pertinent questions are: Was its falling due to the negligence of defendant? Was such negligence the proximate cause of the woman's death? Has the estate by reason thereof sustained damage?

When a vault was not sealed, its shutter rested on a ledge about sixteen inches above the floor and, according to the testimony of E. M. Welch, president of the defendant company, was "tilted back about two inches and there was a wooden wedge at each corner at the top and on the ends." He also said: "The shutter in question was thirty inches wide, eight feet long and approximately one inch thick." It weighed about 300 pounds.

2, 3. We think *res ipsa loquitur* applies. Defendant was operating a business open to the public for inspection. Friends and relatives of the dead were particularly welcome. Plaintiff's intestate and her son were not trespassers or bare licensees. They were at a place where they had a right to be and upon the implied invitation of defendant. It follows that the defendant was bound to exercise due care to avoid injuring them: *Shobert* v. *May,* 40 Or. 68 (66 Pac. 466, 91 Am. St. Rep. 453, 55 L. R. A. 810). The placing of the shutter was under exclusive control of defendant. There is no evidence that the boy did anything to cause it to fall. Common experience teaches that if the shutter had been properly fastened

it would not have fallen.   The accident is such as in the ordinary course of things does not happen, if due care is exercised.   At least, we think the jury was permitted to deduce, from facts proven, the reasonable inference that the shutter fell as a result of defendant's negligence in securing or fastening it.   The doctrine has often been applied in cases of falling objects: 20 R. C. L. 191; Shearman & Redfield on Negligence (6 ed.), § 60.   It is tersely stated in the leading case of *Scott* v. *London Docks Co.*, 3 Hurl. & C. 596, quoted with approval in *Richardson* v. *Portland T. Car Co.*, 113 Or. 544 (233 Pac. 540):

"But when the cause of the accident is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen, if those who have the management use proper care, it affords reasonable evidence for the jury in the absence of explanation by the defendant, that the accident arose from the want of proper care."

As stated in *Boyd* v. *Portland Elec. Co.*, 41 Or. 336 (68 Pac. 810):

"*Res ipsa loquitur* is a maxim of evidentiary potency and consequence and serves to imply or raise a presumption of negligence as a fact, when from the physical facts attending the accident or injury there is a reasonable probability that it would not ·have happened if the party having control, management, or supervision, or with whom rests the responsibility for the sound and safe condition of the thing, property, or appliance which is the immediate cause of the accident or injury, had exercised usual and proper care and precaution with reference to it."

In *Sweeney* v. *Erving*, 228 U. S. 233 (57 L. ·Ed. 815, 33 Sup. Ct. Rep. 416, Ann. Cas. 1914D, 905, see, also, Rose's U. S. Notes), the court said:

"In our opinion, *res ipsa loquitur* means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict."

4. In our opinion, a *prima facie* case of negligence was established. Defendant offered no testimony to show what caused the shutter to fall. True, evidence was introduced tending to prove that these shutters were properly secured, but was the jury bound to accept this as conclusive on the question of negligence? From the record before us, we cannot say as a matter of law that this evidence overcomes the inference or presumption of negligence arising from the manner in which the accident happened: *Coblentz* v. *Jaloff,* 115 Or. 656 (239 Pac. 825). Whatever may be the rule in other jurisdictions, Section 793, Or. L., designates inferences and presumptions as indirect evidence. Where a presumption of negligence exists, can we say there is no evidence of negligence? It was for the jury to determine the ultimate fact, as to whether the defendant exercised due care: *Richardson* v. *Portland T. Car Co., supra; Barnowsky* v. *Helson,* 89 Mich. 523 (50 N. W. 989, 15 L. R. A. 33).

*Goss* v. *Northern Pac. Ry. Co.,* 48 Or. 439 (87 Pac. 149) is no longer authority to the contrary, as such decision was rendered prior to the adoption of the constitutional amendment (§ 3c, Art. VII) which precludes this court from considering the weight of evidence. See *Richardson* v. *Portland T. Car Co., supra,* wherein the Goss case is considered.

5. It is urged that defendant could not reasonably anticipate that plaintiff's intestate would thus be injured. This may be true, but it is not necessary for plaintiff so to establish. It is sufficient if there is evidence tending to show defendant might reasonably have anticipated that some person rightfully in its place of business would be injured if the shutter fell to the floor: *Voshall* v. *Northern Pac. Terminal Co.*, 116 Or. 237 (240 Pac. 891). Without doubt, plaintiff's intestate, in rushing to the rescue of her child, did only that which any natural mother would have done under the same circumstances. That she exerted almost superhuman power in an endeavor to lift this heavy marble slab and that in so doing she sustained an injury is a conclusion which seems to us reasonable.

6-8. Having held there is evidence of negligence, we next proceed to the inquiry: Was such negligence the proximate cause of this woman's death? Unless the facts are undisputed, the question is one within the exclusive province of the jury to determine: *Brady* v. *Oregon Lumber Co.*, 118 Or. 15 (243 Pac. 96, 245 Pac. 732); *Voshall* v. *Northern Pac. Terminal Co., supra.* When the evidence is conflicting and different reasonable inferences can be drawn as to what caused an injury, the matter should be submitted to the jury: *Palmer* v. *Portland Ry., L. & P. Co.*, 56 Or. 262 (108 Pac. 211). Several physicians and surgeons of reputable standing testified that plaintiff's intestate died as a result of carcinoma, or cancer of the stomach. Equally reputable members of the medical profession testified that cancer was not the cause of this death. Dr. C. J. Smith, a witness on behalf of plaintiff, testified that, due to straining and lifting, "a thrombosis formed which didn't sufficiently per-

mit the blood to pass through and became partially organized, and then as time went on, small particles of that floated off and went through the capillary system of the lungs, producing the embolism that caused death.'' The issue of proximate cause was properly submitted to the jury.

9, 10. It is urged there is no evidence of a pecuniary loss sustained by the estate. The record discloses that deceased was married and the mother of three children, aged six, seven and fifteen years, respectively. At the time of injury she was a strong, healthy and vigorous woman, thirty-eight years of age. Aside from numerous household duties, she earned $200 per year soliciting for the Spirea Corset Company. She also earned about $200 each year dressmaking. A boarder paid $35 per month. Her sister testified it would cost about $50 per month to secure a competent woman to take care of the children. We think this evidence warranted the jury in reaching the conclusion that the pecuniary net loss sustained to the estate was $2,500. Of course, there was more or less speculation in determining the probable net earnings of this woman. Life is, indeed, uncertain. We prosper to-day and lose to-morrow. As stated in *Rorvik* v. *North Pac. Lumber Co.*, 99 Or. 58 (190 Pac. 331). ''There is no absolute method of computing the damages in a case of this kind.'' Much must be left to the discretion of the jury. The court, in instructing the jury as to the measure of damages, followed the rule announced in *Carlson* v. *Oregon Short Line Ry. Co.*, 21 Or. 450 (28 Pac. 497). There is no basis for complaint in that respect.

11. Error is predicated in permitting plaintiff to reopen the case twice for the purpose of offering additional evidence relative to the question of damages.

This objection goes to the order of proof. It is a matter of procedure resting within the sound discretion of the trial court: *State* v. *Isenhart,* 32 Or. 170 (52 Pac. 569). Causes should be determined on their merits. The court did not abuse its discretion in extending plaintiff every reasonable opportunity to present the facts.

Defendant complains of an instruction given concerning the alleged negligence of the child in causing the slab to fall. Since there is no evidence that the slab was thus caused to fall, the instruction might be subject to criticism as being abstract, but it certainly was not prejudicial to the defendant. Indeed, if a marble slab weighing approximately 300 pounds could be pulled over by a child four years of age, it would be strong evidence, in our opinion, that it was not properly secured.

12. Exception is taken to a hypothetical question propounded to certain doctors, in that it assumed facts not in evidence. It is elementary that hypothetical questions to expert witnesses must be based on evidence in the record. When made, the objection was well taken, but the error was cured by the subsequent introduction of the evidence lacking at the time the question was asked. We see no objection to the question as invading the province of the jury.

There are other minor assignments of error relative to the admission of certain testimony, which we will pass as having no merit.

13. Plaintiff in his cross-appeal assigns error in reducing the judgment from $2,500 to $1,260. By virtue of Article VII, Section 3c of the Oregon Constitution, the Supreme Court has authority, where material error exists in a record, to retry the case and render such a judgment as, in its opinion, should have been

rendered in the court below. *Hoag* v. *Washington-Oregon Corp.,* 75 Or. 588 (144 Pac. 574, 147 Pac. 756); *Mount* v. *Welsh,* 118 Or. 568 (247 Pac. 815). However, the Constitution does not vest this authority in the Circuit Courts. Furthermore, the record discloses no material error. It was error for the trial court to substitute its judgment on the question of damages for that of the jury.

The judgment entered for $1,260 is reversed and the cause is remanded, with directions to enter judgment for $2,500 in favor of plaintiff.

REVERSED and REMANDED, WITH DIRECTIONS.<br>REHEARING DENIED.

McBRIDE, C. J., and BEAN, J., concur.

RAND, J., absent.