## KREIDLER v. KETCHIKAN SPRUCE MILLS.
### No. 2391–KA.

District Court of Alaska.  First Division.  Ketchikan.
Dec. 1, 1943.

Harry McCain, of Ketchikan, for plaintiff.

Ziegler & King, of Ketchikan, for defendant.

ALEXANDER, District Judge.

The plaintiff A. C. Kreidler, as administrator of the estate of Frank Reinke, deceased, brought this action against the defendant to recover damages on account of the death of his intestate which was caused, as the Complaint alleges, by the negligence of the defendant.

The wrongful act complained of was that the deceased was killed while walking on the sidewalk adjacent to Bawden Street by being struck by a truck, driverless and out of control of said defendant and its employees, causing injuries to the deceased from which he died a few hours thereafter.

The action was brought under Section 3845, C.L.A.1933, which provides: "When the death of a person is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor against the latter, if the former might have maintained an

action, had he lived, against the latter for an injury done by the same act or omission."

And it also provides: "And the amount recovered, if any, shall be exclusively for the benefit of the decedent's husband or wife and children when he or she leaves a husband, wife, or children, him or her surviving; and when any sum is collected it must be distributed by the plaintiff as if it were unbequeathed assets left in his hands, after payment of all debts and expenses of administration."

This section of our statute was taken from the Oregon Code, and the measure of damages laid down by the Oregon Supreme Court in the early case of Carlson v. Oregon Short-Line & U. N. Ry. Co., 21 Or. 450, 28 P. 497, is still followed.

In actions brought under this section, the true measure of damages, as stated in that case, "is the pecuniary loss suffered by the estate, without any solatium for the grief and anguish of surviving relatives or pain or suffering of the deceased; and that loss would be what the deceased would have probably earned by his intellectual or bodily labor in his business or profession during the residue of his life, and which, as representing his net savings, would have gone for the benefit of his estate, taking into consideration his age, ability, and disposition to labor, and his habits of living and expenditures." Carlson v. Oregon S.-L. & U. N. Ry. Co., 21 Or. 450, 28 P. 497, 499; Gabrielson v. Dixon, 133 Or. 567, 291 P. 494, 495.

The evidence in the case showed that the deceased (Reinke) was a man 73 years old; with a life expectancy of a little over 6 years; of "very good health"; that he worked all the time as a "kettle man" preparing hot tar for roofing purposes and at cement work and other common labor, including shoveling, fixing foundations, gardening, etc. That his wages shortly before his death were 75¢ to $1 an hour. Kreidler, an old-time friend of the deceased, who was the only witness called as to Reinke's age, habits, etc., also testified that Reinke "lived good" but later explained that

what he meant by "lived good" was that he "ate good". That otherwise Reinke was a man of frugal habits, lived in two rooms for which he paid ten dollars a month rent, and had no expensive habits. That he would loan money to his friends for which he (Kreidler) upbraided him, but Reinke always said he "would get it back."

Concerning the estate left by Reinke, the evidence shows that it consisted of a house and lot at Wacker City, near Ketchikan. That Reinke paid $250 for the lot and built a building on it in which he for some time ran a store. That this property was appraised at $250 and later sold by the administrator for $355. The only other property which the administrator found and included in his estate was $55.55. That he may have had money due him for loans made to friends and for labor, etc., but he could find no record of it. The defendant offered no testimony whatever.

No fixed or arbitrary rule has, nor do we think can be made, for fixing the amount of damages in cases of this character.

We agree with the language used by the Court in Carlson v. Oregon S.-L. & U. N. Ry. Co., supra: "Nor do we think any rule can be laid down in this class of cases by which the damages can be ascertained with even approximate mathematical certainty. As we have before indicated, the amount must depend very much upon the good sense and sound judgment of the jury, upon the facts of each particular case."

There is no evidence as to what kind of a house was built on the Wacker lot, except that deceased built it for a store and occupied it as such for a while. One thing, however, is certain, that it cost considerably more than $105, the difference between the cost of the lot and what the property finally sold for, and that deceased must have paid for it out of his savings.

The Court also assumes, as a matter of common knowledge, of which the Court takes judicial notice, that

between 1926 and 1942 (the dates between which the deceased acquired the Wacker lot and his death), particularly after 1929 and for several years thereafter, the country went through probably the worst depression and era of unemployment in our history, during which many men were scarcely able to earn their bare necessities of life, and very few were able to save or accumulate anything. This was particularly true of the laboring men, to which class the deceased belonged.

I think it can also be held that a person's possible savings can not be measured by the size of the estate they leave. Many people have worked hard all their lives, lived economically, in cases denying themselves almost the bare necessities of life, to accumulate a competency for their old age, only to have their life-savings disappear over night, as it were, by fire or other casualty, or through sickness or bad investments, and the like. There is no evidence to assist the Court in this respect. We do know, however, from the allegations of the Complaint, that the deceased had a family of four children and we know that it costs money to raise such a family, which represents money he did save or didn't spend on himself any way. We also know from the evidence that the deceased was a frugal man and lived modestly, paying $10 a month rent, which is about the minimum for that purpose. We also know that wages had gone up at least 25% shortly before his death, and that he had loaned money to friends which his administrator had no record of or couldn't collect, but which the deceased always thought he could collect, and would undoubtedly have been able to collect some part of at least had he lived.

The defendant contends that even if the Court finds for the plaintiff in this case, that it can only award a nominal amount of damages; his specific contention being that since it appears that the deceased had accumulated only $410.55 between 1926 and 1942, the Court could only award such amount "for the something over six years" life expectancy of the deceased, as that time would bear to the sixteen

years (between 1926 and 1942) and the amount saved during such sixteen-year period. In other words, that the Court could not award the plaintiff damages in excess of 6/16ths of $410.55.

With this the Court does not agree. Counsel for defendant has produced no authorities, nor do we think he can produce any, to support his position. On the other hand, numerous cases could be cited holding to the contrary.

The same question was raised in the case of Scott v. Brogan, 157 Or. 549, 73 P.2d 688, 691, where it was shown that the deceased, who was 43 years of age, at the time of her death was the mother of nine children, six of them living with her and dependent upon her for support and maintenance; that she was supplied approximately $48 a month through the Red Cross and the Deschutes County; and that through her labor and efforts at home, with the financial assistance provided by relief agencies and additional funds earned by herself, she was able to provide food, clothing and shelter for the six children living with her, and "that she was industrious, with a disposition to labor, and thrifty." A judgment for $5,500 was approved.

In Gabrielson v. Dixon, 133 Or. 567, 291 P. 494, 495, the defendant assigned as error the failure of the Court to direct a verdict for the plaintiff for nominal damages only. It was there pointed out that the decedent had accumulated practically no property and was working for $3.60 a day. In holding that no error was committed in denying the motion for such a directed verdict, the opinion therein stated: "While, as has been said, there is great difficulty in determining the value of a life, yet the amount of compensation to be recovered in actions of this nature is a question for the jury and not a question of law for the court. The instruction requested, if given, would have taken the case from the jury and determined as a matter of law that, if plaintiff's intestate had lived, he would have accumulated nothing during the remainder of his life. The amount of compensation to be recovered in the action 'must depend to quite an extent upon

the good judgment of the jury upon a consideration of all the facts and circumstances of each particular case under proper instructions as to the law applicable thereto.' "

In Rekdahl v. Cheney, 134 Or. 251, 293 P. 412, 413, an action was brought by the administratrix of the estate of a minor decedent who was between eight and nine years of age at the time of death. Judgment for $2,500 was given for the plaintiff, and on appeal the defendant contended that the court should have directed a verdict for the defendant. In answering that argument this court said: "Appellant complains of the submission of this cause to the jury because of the assumed inadequacy of the evidence upon the question of damages. To adopt the reasoning of appellant upon this phase of the case would have the effect of holding that there can be no substantial recovery where children are the victims, because, at the time, they had no earning capacity. The statement of such a rule carries its own refutation." See, also, Gillilan v. Portland Crematorium Association, 120 Or. 286, 249 P. 627.

And in Carlson v. Oregon S.-L. & U. N. Ry. Co. supra, the Court stated: "There is an inherent difficulty in placing a pecuniary value upon human life, and, in an action for the wrongful death of a person, the amount of damages recoverable must depend very much on the good sense and sound judgment of the jury, upon all the facts and circumstances of each particular case." The rule therefore seems well established that "the amount of damages recoverable must depend very much on the good sense and sound judgment of the jury, upon all the facts and circumstances of each particular case," and the same rule would apply to the Court, sitting as a jury or where a jury has been waived, as in this case.

From the foregoing facts, and the law as hereinbefore stated, taking into consideration all the testimony offered, the Court is of the opinion, and finds, that with the increase in wages now enjoyed and current at the time of the death of the decedent, together with the fact that the deceased was

an industrious man, "always busy", of frugal habits, and with no family now dependent on him, and with an expectancy of "a little more than six years," as stipulated, that the damage to his estate, caused by his untimely death through the negligence of the defendant, measured by the value of deceased's life to the estate, based on his earning capacity, thriftiness, and probable length of life of the deceased, is $1,600 and that such amount shall be exclusively for the benefit of the decedent's children, and must be distributed by the plaintiff as if it were unbequeathed assets left in his hands, after payment of all debts and expenses of administration.

Findings and judgment may be prepared and presented in accordance herewith.