Argued and submitted January 20, 2015, reversed and remanded as to plaintiff parents' claims for relief, otherwise affirmed April 27, 2016

Lori HORTON,
as guardian *ad litem* and
Conservator of and for
Tyson Horton, a Minor,
*Plaintiff,*
*and*

Lori HORTON,
individually; and
Steve Horton,
*Plaintiff-Appellants,*
*v.*

OREGON HEALTH
AND SCIENCE UNIVERSITY,
a Public corporation; and
Marvin Harrison, M.D.,
*Defendants-Respondents,*
*and*

PEDIATRIC SURGICAL ASSOCIATES, P.C.,
an Oregon professional corporation; and
Audrey Durrant, M.D.,
*Defendants.*

Multnomah County Circuit Court
110811209; A155917

373 P3d 1158

Maureen Leonard argued the cause for appellants. With her on the briefs were David K. Miller and Robert Wagner.

Janet M. Schroer argued the cause for respondents. With her on the brief was Hart Wagner LLP.

Before Sercombe, Presiding Judge, and Hadlock, Chief Judge, and Tookey, Judge.

HADLOCK, C. J.

## HADLOCK, C. J.,

Plaintiffs are the parents of a very young child whose liver was severely damaged during surgery performed by defendants, who—at least for purposes of this appeal—do not dispute plaintiffs' allegation that their negligence harmed the child. The child's mother ("plaintiff mother") was informed that the child needed an emergency liver transplant because of the damage caused during the surgery, and she subsequently learned that her body tissues "matched" her child's. Four days after the child's initial surgery at Oregon Health & Science University ("OHSU"), medical staff at a different facility transplanted part of plaintiff mother's liver into the child. Plaintiffs subsequently brought this action, contending that plaintiff mother suffered physical and emotional harm as a result of defendant's negligence in performing the original surgery on her child. The child's father ("plaintiff father") brought a derivative claim for loss of consortium. On defendants' motion, the trial court dismissed the plaintiff parents' claims, determining that the harms to plaintiffs were neither foreseeable results of defendants' negligent surgery on the child nor caused by that initial surgery.[1] We disagree. On the pleaded facts, a reasonable factfinder could determine that the harms to plaintiffs were among the foreseeable risks of defendants' negligent surgery on their child and, further, that the negligent surgery was a cause in fact of plaintiffs' harm, despite plaintiff mother's intervening choice to sacrifice a portion of her liver to save her child. Accordingly, we reverse the trial court's dismissal of parents' claims, and remand.

The pleading pertinent to this appeal is the amended complaint, which included four claims for relief: (1) a claim by plaintiff mother, acting in her capacity as guardian *ad litem* and conservator for her child, against defendants for negligently harming the child in the initial surgery; (2) a

---

[1] The amended complaint named four defendants: OHSU, Pediatric Surgical Associates, P.C., Marvin Harrison, M.D., and Audrey Durrant, M.D. The trial court subsequently granted an unopposed summary judgment motion filed by Pediatric Surgical Associates, P.C., and entered a limited judgment in its favor. Plaintiffs later voluntarily dismissed claims against Durrant. Accordingly, this opinion's references to "defendants" generally are to OHSU and Harrison, except where context may require otherwise.

claim by plaintiff mother for her own injuries associated with the subsequent liver-transplant surgery; (3) plaintiff father's claim for loss of consortium with plaintiff mother; and (4) plaintiffs' past and future economic damages associated with caring for their child.

In the second claim for relief, plaintiff mother alleged that her infant child was diagnosed with hepatoblastoma and that defendant OHSU recommended that he have surgery to remove one lobe of his liver. During that surgery, performed when the child was about eight months old, defendants severed blood vessels leading to and from the child's liver, necessitating further procedures, which plaintiffs alleged caused additional damage. Plaintiffs alleged that defendants were negligent in several respects, including utilizing inexperienced surgeons, performing the initial surgery without coordinating with a transplant team, failing to properly identify the vessels upon which they operated, and failing to stop the child's bleeding.

Soon after the child's surgery at OHSU, plaintiff mother alleged, she:

> "was advised by physicians attending to her son * * *, including those at OHSU, that because of the injuries he suffered in the * * * surgery at OHSU he would not survive without an emergency liver transplant. She thereafter learned that her body tissues 'matched' those of her son and that she was, therefore, an eligible liver donor for her son. Plaintiff [mother], therefore, took the reasonably foreseeable step of donating a portion of her liver to save the life of her son."

Plaintiff mother also alleged that she suffered a complication from the transplant surgery, which required an additional surgery. Plaintiff mother claimed economic damages associated with the physical injuries from those surgeries, lost income, and severe emotional distress, both from her own surgeries and from learning of the complications associated with her child's surgery at OHSU.

Defendants moved against the amended complaint pursuant to ORCP 21, arguing, among other things, that the second claim for relief should be dismissed for failure to state facts constituting a claim. Defendants argued that plaintiff mother's claim failed as a matter of law for these

reasons: she had not alleged that she had a physician-patient relationship with the defendant physicians; she had not alleged facts showing a causal link between defendants' alleged negligence in providing medical care to the child and her own subsequent surgeries; the "foreseeability" standard associated with negligence claims should not apply because defendants' duty was, instead, prescribed by the statutory standard of care for physicians;[2] and—even if foreseeability principles did apply, "the voluntary donation of an organ to the defendant doctors' patient by a third person cannot be deemed the foreseeable result of malpractice by the defendant doctors during surgery on the defendant doctors' patient." Defendants also argued that, if the trial court dismissed the second claim for relief, it should dismiss the third claim for relief, that is, plaintiff father's "claim for loss of consortium based on his wife's claim."

The trial court granted defendants' motion to dismiss the second and third claims for relief. The court did not agree with defendants that the lack of a physician-patient relationship was fatal to plaintiffs' claims. Rather, it dismissed the claims on the ground that, because plaintiff mother had "voluntarily [made] a decision to engage in a surgery to donate an organ," her claims against defendants were "too far attenuated to have [the] sort of either foreseeability or causal link that *** is currently required under Oregon law." Accordingly, the court entered a limited judgment in favor of defendants on the second and third claims for relief. It is that limited judgment from which plaintiffs appeal.[3]

---

[2] Defendants pointed to ORS 677.095(1), which provides:

"A physician licensed to practice medicine or podiatry by the Oregon Medical Board has the duty to use that degree of care, skill and diligence that is used by ordinarily careful physicians in the same or similar circumstances in the community of the physician or a similar community."

We quote the current version of the statute. Although the statute was amended in 2013, after the trial court's decisions in this case, those amendments are not pertinent to the parties' arguments and do not affect our analysis. *See* Or Laws 2013, ch 129, § 8.

[3] The limited judgment also reflects dismissal of claims against Durrant. We do not disturb that aspect of the judgment.

Following additional pretrial proceedings, *see* 277 Or App at 823 n 1, a third amended complaint was filed seeking damages related only to the injuries suffered by the child. In their answer, the remaining defendants (OHSU and

In this court, plaintiffs argue, as they did below, that the amended complaint adequately stated a negligence claim by plaintiff mother against defendants for harm she suffered as a result of defendants' negligent surgery on the child. To adequately plead a negligence claim, a complaint

"must allege facts from which a factfinder could determine (1) that defendant's conduct caused a foreseeable risk of harm, (2) that the risk is to an interest of a kind that the law protects against negligent invasion, (3) that defendant's conduct was unreasonable in light of the risk, (4) that the conduct was a cause of plaintiff's harm, and (5) that plaintiff was within the class of persons and plaintiff's injury was within the general type of potential incidents and injuries that made defendant's conduct negligent."

*Solberg v. Johnson*, 306 Or 484, 490-91, 760 P2d 867 (1988). Plaintiffs contend that they adequately pleaded each of those elements.

In response, defendants defend the trial court's reasoning that—given plaintiff mother's choice to donate a portion of her liver to the child—plaintiffs' complaint did not adequately plead the first and fourth elements of a negligence claim, that is, foreseeability and causation. The structure of defendants' argument reflects the oft-quoted holding from *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 17, 734 P2d 1326 (1987):

"[U]nless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of liability for harm actually resulting from defendant's conduct properly depends on whether that conduct unreasonably created a foreseeable

---

physician Harrison) admitted certain fault associated with the child's surgery at OHSU. Accordingly, the parties agreed that, at trial, "the jury [would] only be asked to determine the nature, extent and amount of [the child's] damages." The jury returned a verdict for plaintiff, awarding damages of more than 10 million dollars.

After hearing post-trial motions, the trial court ruled that a "$3 million aggregate damage limit applies to OHSU in this case," but that the "damages verdict should not be reduced as to defendant Dr. Harrison" because such a reduction would violate various provisions of the Oregon Constitution. The trial court entered a limited judgment to that effect. Defendant Harrison has appealed that limited judgment directly to the Supreme Court pursuant to ORS 30.274; the case number is S061992.

risk to a protected interest of the kind of harm that befell the plaintiff."

Defendants assert that plaintiff mother's injuries "did not 'actually result' from defendants' conduct" and that "nothing 'befell'" plaintiff mother, because "she chose to undergo" the liver-transplant surgery. In their view, no allegations in the complaint could support an opposite determination.

In addition, defendants make an argument that focuses on their characterization of plaintiff mother's claim as one for "medical malpractice."[4] Defendants contend that, in such a case, the general *Fazzolari/Solberg* "foreseeability" paradigm does not apply; instead, they assert, the plaintiff must allege the breach of a duty that runs from the defendant to the plaintiff—a duty that is premised on the existence of a physician-patient relationship. Because plaintiffs have not alleged that plaintiff mother had a physician-patient relationship with defendant Harrison, defendants conclude that plaintiffs' medical-malpractice claim necessarily fails.

In considering the parties' arguments, which all relate to the trial court's dismissal of plaintiff mother's claim for "failure to state ultimate facts sufficient to constitute a claim," ORCP 21 A(8), we review "for legal error, taking as true all well-pleaded factual allegations, and giving plaintiff the benefit of all reasonable inferences that can be drawn from those facts." *Nationwide Ins. Co. of America v. TriMet*, 264 Or App 714, 715, 333 P3d 1174 (2014) (internal quotation marks omitted).

We begin with, and quickly dispose of, defendants' contention that a medical-malpractice claim must always be premised on the existence of a special status—that is, a physician-patient relationship—between the plaintiff and the defendant. We have repeatedly rejected that argument, most recently in *Tomlinson v. Metropolitan Pediatrics, LLC*, 275 Or App 658, 672-75, 366 P3d 370 (2015) (citing cases).

We turn to defendants' remaining arguments, which relate to whether plaintiff mother adequately pleaded a negligence claim. The parties' arguments on that point focus

---

[4] Plaintiffs, instead, use the term "medical negligence."

on whether plaintiff mother adequately alleged foreseeability and causation. That is, the parties dispute whether the amended complaint alleged facts from which a factfinder could determine (1) that defendants' negligent surgery on the child caused a foreseeable risk of harm to persons other than the child, of the type that plaintiff mother suffered and (2) that defendants' negligence was, in fact, a cause of the harm that plaintiff mother suffered when she chose to donate part of her liver to save the child.

Although "foreseeability" and "causation" may sometimes seem to overlap, conceptually they "are separate elements." *Towe v. Sacagawea, Inc.*, 357 Or 74, 87, 347 P3d 766 (2015).

> "Foreseeability is a prediction of the risk that an act or omission will result in a particular kind of harm—it turns on what *prospectively might* happen. Causation is an assessment of whether a particular act or omission in fact resulted in the particular harm that a plaintiff suffered—it turns on what *retrospectively did* happen. Thus, apart from proving either that the defendant's conduct created an unreasonable risk of the kind of harm that befell the plaintiff or that the defendant breached a special duty owed to the plaintiff, the plaintiff in a negligence action must also prove an actual causal link between the defendant's conduct and the plaintiff's harm—that is, the plaintiff must prove 'cause in fact.'"

*Id.* (emphases in original; internal quotation marks and citations to *Fazzolari* omitted). Accordingly, we consider those elements separately, beginning with causation.

"Cause in fact" has a well-defined legal meaning in Oregon: "it generally requires evidence of a reasonable probability that, but for the defendant's negligence, the plaintiff would not have been harmed." *Joshi v. Providence Health System*, 198 Or App 535, 538-39, 108 P3d 1195 (2005), *aff'd*, 342 Or 152 (2006). On that point, *Tomlinson* provides helpful guidance. Two of the plaintiffs in that case were a couple who had two children, Manny and Teddy. 275 Or App at 660. The defendants were medical service providers for Manny, the older of the two children. The plaintiff parents alleged that the defendants negligently failed to diagnose Manny with a particular genetic condition and to inform

his parents of that condition. The plaintiff parents further alleged that, as a result of the defendants' negligence, they conceived and bore Teddy, who suffers from the same inherited condition. *Id.* The plaintiff parents brought a negligence claim—framed as a "wrongful birth" claim—against the defendants, alleging that they had suffered damages associated with caring for Teddy and for severe emotional distress. *Id.* at 663-64. The trial court granted the defendants' motions to dismiss for failure to state a claim. *Id.* at 660.

On appeal, and as discussed above, we first rejected the defendants' argument that the plaintiff parents' claim against their child's medical providers failed because the plaintiff parents had not alleged that they had a physician-patient relationship with the defendants. *Id.* at 671-75. We then considered whether the plaintiff parents had adequately alleged causation. In doing so, we asked whether their allegations "directly link[ed] defendants' conduct—that is, their failure to diagnose Manny and inform the [plaintiff parents] of his condition and its implications for them—with the injury that the [plaintiff parents] suffered—that is, the infringement of their interest in making informed reproductive choices and avoiding conceiving or bearing Teddy." *Id.* at 678. The pertinent allegation was the plaintiff parents' assertion that, "but for defendants' failure to diagnose Manny * * * and inform them of his condition and their reproductive risks, they 'would not have produced another child'" who suffered from that condition. *Id.* We held that the "but for" allegation adequately linked the defendants' conduct to the plaintiff parents' harm; "nothing more [was] necessary" for them "to sufficiently allege causation." *Id.*

To apply that principle here, we pose the following question, which is analogous to the one we addressed in *Tomlinson*: Has plaintiff mother alleged a direct link between defendants' negligently performed surgery on her child's liver and the harm that she suffered during the subsequent liver-transplant surgery? We conclude that she has. Although the words "but for" do not appear in the amended complaint, the allegations in that pleading reflect the pertinent link, as explained in plaintiffs' opening brief:

> "As to causation, but for the defendants' surgical errors that destroyed her son's liver, [plaintiff mother] would not have suffered the loss of a portion of her own liver. [Plaintiff mother] alleged, '[a]s a direct result of the negligence of defendants, plaintiff [mother] was required to undergo surgery to save the life of her son * * *.'"

In arguing to the contrary, defendants do not contend that their negligence cannot be viewed as a "but for" cause of plaintiff mother's injury; they do not suggest that plaintiff mother might have for some reason decided to sacrifice part of her liver even if her child had not needed a liver transplant. Thus, defendants do not argue that no causative chain of events links their negligence during the child's initial surgery to the harm that plaintiff mother subsequently suffered. Rather, defendants argue that an intervening event broke that causative chain: plaintiff mother's voluntary choice to undergo liver transplant surgery. Defendants cite no Oregon authority to support that argument. Instead, they simply insist that, because plaintiff mother decided herself to have the surgery, defendants' actions cannot be deemed to be the cause of injuries she suffered as a consequence of that operation.

As a bare proposition, defendants' argument cannot withstand *Tomlinson*, in which we held that the plaintiff parents had adequately pleaded that the defendants' negligence in failing to diagnose their older son's genetic condition was a "cause in fact" of the damages they suffered from conceiving and bearing another child who suffers from that condition, despite the fact that the plaintiff parents made a choice—to have a second child—without which the harm would not have occurred. The important point is that here, as in *Tomlinson*, plaintiff mother's choice *itself* was allegedly driven by defendants' negligence. In *Tomlinson*, the plaintiff parents alleged that they would not have chosen to have the second child if they had known of the associated reproductive risks (*i.e.*, if not for the defendants' alleged negligence in failing to recognize that risk and advise the plaintiffs of it). Here, plaintiff mother alleges that she would not have chosen to donate part of her liver to her child—she would not have had to make that choice—if not for the failed liver

surgery at OHSU (*i.e.*, if not for defendants' negligence in performing that operation).

Our conclusion that plaintiffs have adequately pleaded causation is supported by the few Oregon cases that address situations in which a plaintiff was injured in the course of responding to the defendant's negligent conduct, rather than being more directly affected by that negligence. In *Gillilan v. Portland Cremation Ass'n*, 120 Or 286, 249 P 627 (1926), the court addressed a case in which the defendant's negligence allegedly caused a large marble slab to fall, pinning a child beneath it. The child's mother attempted to lift the slab off of the child (who was unharmed) and she later died of injuries allegedly caused by that rescue attempt. *Id.* at 289. The decedent's estate sued to recover damages for her death, and a jury found in the estate's favor. In considering whether the case should have gone to the jury, the Supreme Court addressed several questions, including whether the jury could infer from the evidence that the defendant's negligence in allowing the slab to fall had caused the decedent's injuries. The court held that it could, noting that the decedent had done "only that which any natural mother would have done under the same circumstances." *Id.* at 294; *see also Stewart v. Jefferson Plywood Co.*, 255 Or 603, 606, 469 P2d 783 (1970) (stating, without elaboration, that "[t]here was sufficient evidence to establish a cause in fact connection between the careless conduct of defendant's employee" that caused a reportedly out-of-control fire at a sawmill and the injury to the plaintiff, who learned about the fire while at home listening to the radio, went to the warehouse to help fight the fire, and, in attempting to put out sparks on the roof of an adjacent warehouse, fell through a skylight). We conclude that plaintiffs adequately pleaded causation.

The next question, then, is whether plaintiffs adequately pleaded foreseeability. Again, defendants focus on the fact that, as they put it, plaintiff mother "chose to undergo a surgery" and, therefore, "elected" to have the procedure that directly caused her harm. Under those circumstances, defendants contend, her surgery cannot be deemed "the foreseeable consequence of defendants' actions" because "nothing 'befell' her."

Again, "foreseeability" is forward-looking: it "involves a prospective factual judgment about a course of events," *Chapman v. Mayfield*, 358 Or 196, 206, 361 P3d 566 (2015), and asks whether the plaintiff's injury "is one which could have been anticipated because there was a reasonable likelihood that it could happen." *Stewart*, 255 Or at 609. "It is not necessary that the risk of harm be more probable than not; rather, the question is whether a reasonable person considering the potential harms that might result from his or her conduct would 'have reasonably expected the injury to occur.'" *Chapman*, 358 Or at 206 (quoting *Stewart*, 255 Or at 609). "Foreseeability" acts as a limitation on liability and reflects societal judgment regarding the extent to which a defendant can be considered to be at fault for a plaintiff's harm. *Id.*

In *Chapman*, the Supreme Court considered how, over the past five decades, it had attempted "to give informed meaning to" those general principles. *Id.* at 206-07. In particular, the court addressed how it had conceived of—and how courts should conceive of—the harm a plaintiff suffered, when considering whether a defendant reasonably could have foreseen that type of harm. *See id.* at 208 ("[A]ny conception of foreseeability necessarily depends on how the type of harm is described."). The court began with *Stewart*—the case involving the negligently caused sawmill fire and the plaintiff who was injured when he fell through the skylight of an adjacent building while helping to fight the fire—observing that it had described the type of harm the plaintiff suffered "more generally—injuries that may occur while fighting a fire—rather than specifically—injuries incurred from falling through a concealed skylight while fighting a fire." *Id.* at 207.

In discussing cases that followed *Stewart*, the Supreme Court showed how its focus remained on the importance of describing the risks of harm associated with particular kinds of negligent conduct in a way that fairly captures the scope of possible injuries, to certain classes of plaintiffs, for which a negligent defendant may reasonably be deemed responsible. *See generally id.* at 208-15 (discussing cases). For example, the court explained, it had

"in *Fazzolari* reiterated that an assessment of foreseeability does not involve the precise, mechanical prediction of events for which a defendant would be expected to argue; on the other hand, the court observed, it does not adopt a paranoid view of the world that encompasses all sources of potential injury that a plaintiff might propose."

*Id.* at 209. The court concluded in *Fazzolari* that a school district could be held liable in negligence to a student who was sexually assaulted near the entry to her high school because "a trier of fact could find that the type of harm that the plaintiff suffered was reasonably foreseeable to the district in light of the known risk of harm," particularly given evidence that the district knew that another sexual assault had occurred on school grounds only 15 days earlier. *Id.* (discussing *Fazzolari*).

After summarizing more of its negligence decisions, including those that involved intervening acts by third parties,[5] the court articulated a general principle that those cases reflect: "that a plaintiff must allege factual circumstances that, if proved, would permit a trier of fact to find that the defendant knew or should have known of an unreasonable risk of harm *** to a foreseeable plaintiff," *id.* at 215, and the foreseeable risk of harm must have been "of the type that [the plaintiff] suffered." *Id.* at 220. Moreover, the risk must have been foreseeable *prospectively*, not only with the benefit of hindsight. *Id.* at 218.

Significantly, "rescuers" may fall within the class of "foreseeable plaintiffs" in at least some circumstances. That is, an individual who seeks to save the direct victim of a defendant's negligence will sometimes be able to recover damages that the individual incurred while effecting, or attempting to effect, that rescue. For example, the plaintiff in *Stewart*, discussed above, was injured by falling through a skylight only because he voluntarily went to fight a fire that the defendants' negligence had caused. 255 Or at 609. *Fuhrer v. Gearhart-By-The-Sea*, 306 Or 434, 760 P2d 874 (1988), even more obviously involved a person who was

---

[5] *E.g.*, *Buchler v. Oregon Corrections Div.*, 316 Or 499, 853 P2d 798 (1993); *Hawkins v. Conklin*, 307 Or 262, 767 P2d 66 (1988); *Moore v. Willis*, 307 Or 254, 767 P2d 62 (1988).

injured (fatally) only as a result of his attempt to rescue the direct victims of the defendants' alleged negligence. That case included a negligence claim brought by the estate of a hotel guest who died while trying to save children who had been caught in dangerous surf. The plaintiff estate claimed, among other things, that the defendants (the hotel and the state) had negligently failed to warn the children or their parents about the danger. *Id.* at 440. The Supreme Court held that "[t]he failure to warn the children could have created a foreseeable unreasonable risk of harm to decedent as a rescuer." *Id.* And in *Gillilan,* also discussed above, the Supreme Court suggested that the rescue effort made by the decedent—the mother of a child who was pinned beneath a marble slab as the result of the defendant's negligence—was foreseeable and, therefore, the decedent's estate could seek to recover damages associated with her death. *See* 120 Or at 294 (rejecting argument that the defendant "could not reasonably anticipate" that the decedent would be injured, in part because the decedent "did only that which any natural mother would have done under the same circumstances").

We do not view cases like *Stewart, Fuhrer,* and *Gillilan* as establishing some sort of "rescue doctrine" distinct from the principles that ordinarily apply in negligence cases. Rather, they help define when a rescuer may be deemed a "foreseeable plaintiff" to whom a defendant may be liable in negligence. Those cases provide assistance here, as we consider whether plaintiff mother has adequately alleged "foreseeability."

In addressing that question, we must properly describe "the type of harm at risk and the class of plaintiffs at risk with reference to the particular factual circumstances of the case," which we take from the pleadings. *Chapman,* 358 Or at 220. We start by considering the conduct of defendants that is alleged to have been negligent. Defendants set out to perform a significant and critical surgery: removing the right lobe of the child's liver. In the course of that operation, they damaged the child's liver so severely that he required an emergency transplant to survive. Their alleged negligence includes assigning inexperienced surgeons to the

task, failing to properly identify the vessels upon which they operated, and failing to stop the child's bleeding after those vessels were severed. Significantly, plaintiffs also allege that the surgery should have been coordinated, from the start, with a transplant surgeon or transplant team. Accepting those allegations as true, as we must, we readily conclude that the resulting need for an emergency liver transplant is a foreseeable risk of that conduct.

The more difficult question is whether plaintiffs have adequately alleged that plaintiff mother—the liver donor—was a "foreseeable plaintiff" in these circumstances. That is, we must decide whether plaintiff mother, in acting essentially as a rescuer of her child, fell within "the class of plaintiffs at risk." *Id.* We conclude that she did. Plaintiff mother alleged that, after she was told of the need for an emergency transplant, she "learned that her body tissues 'matched' those of her son and that she was, therefore, an eligible liver donor." Viewing the allegations in the light most favorable to plaintiffs, we conclude that a factfinder could reasonably infer that plaintiff mother's decision to undergo liver-transplant surgery (1) was prompted by her child's need for a transplant (the amended complaint includes no allegation that mother would have donated her liver under other circumstances) and (2) was made possible by the tissue match—a match that is more common between family members than it would be between strangers.[6] On both points, the close bond between family members provides definition to the "class of plaintiffs at risk" and prevents that class from expanding without bounds. We need not decide, in this case, whether unrelated organ donors fall within the class of foreseeable plaintiffs in cases where medical negligence causes the need for transplant surgery. It is sufficient here to conclude that the parent of an infant who will die without an emergency transplant falls within that class.

---

[6] On that point, it is reasonable to "expect juries to bring to their task" a general understanding that biologically related individuals are more likely to "match" for organ-donation purposes than are unrelated individuals. *See Chapman*, 358 Or at 221 (noting that, in *Stewart*, "it was rational to permit an inference, based on facts in the record and the general knowledge that courts expect juries to bring to their task, that a negligently started fire will attract firefighters who reasonably can be expected to incur injuries").

To recap: Plaintiff mother's negligence claim against defendants is not foreclosed by the absence of a physician-patient relationship between plaintiff mother and defendants. In addition, plaintiff mother has adequately pleaded both causation and foreseeability. The trial court erred in ruling otherwise and in dismissing plaintiff mother's claim for failing to state a claim for relief. It follows that the trial court also erred in dismissing plaintiff father's derivative claim for loss of consortium. Accordingly, we reverse the trial court's dismissal of both of those claims and remand for further proceedings.

We must address one more argument that defendants make on appeal. They contend that, at least, we should hold that mother is not entitled to the damages for emotional distress that she seeks in paragraphs 20, 21, and 22 of the amended complaint; defendants assert, for several reasons, that those damages are not recoverable under Oregon law. A similar argument was the subject of another ORCP 21 motion that defendants made to the trial court, which did not rule on the motion because it had dismissed plaintiffs' claims on other grounds. Under the circumstances, we decline to reach that argument on appeal, as we believe that it is more appropriately addressed by the trial court in the first instance on remand.

Reversed and remanded as to plaintiff parents' claims for relief; otherwise affirmed.